Helen Loretta WHITMAN, Executrix of the Estate of Paul S. Whitman, Deceased, Plaintiff in Error,

v.

Florence M. WHITMAN, Individually, and as Mother and Next Friend of Paula Jo Whitman and Mary Ann Whitman, Minor Children, Defendant in Error.

No. 41543.

Supreme Court of Oklahoma.

July 18, 1967.

Kay Wilson, Jr., Muskogee, for plaintiff in error.

Andrew Wilcoxen, John M. Gephart, Muskogee, for defendant in error.

DAVISON, Justice.

This is an appeal by Helen Loretta Whitman, Executrix of the Estate of Paul S. Whitman, Deceased, (defendant below) from a money judgment rendered against her in favor of Florence M. Whitman, individually, and as mother and next friend of Paula Jo Whitman and Mary Ann Whitman, minor children (plaintiff below). We will refer to the parties by their trial court designation or by name. Plaintiff's action sought recovery of a judgment against the estate of her divorced husband for child support payments due prior to his death, and also payable after his death, projected to the majority of the children.

The circumstances from which the present action arose are that the deceased was a dentist and had been married to plaintiff, and on April 18, 1960, a decree of divorce was granted to plaintiff from Dr. Whitman on the ground of incompatibility in which each was awarded certain real estate, and whereby custody of their then three minor children was awarded to plaintiff. The decree ordered Dr. Whitman to pay to plaintiff for the support of the three children the sum of $400 per month, "and such payments to continue until further order of this court."

On November 18, 1960, Dr. Whitman married Helen Loretta Whitman, the present executrix of his estate, and no children were born of this marriage. Thereafter, on May 16, 1962, the court, with the consent of plaintiff and Dr. Whitman, reduced the child support to $300 per month until further order of the court. On June 18, 1962, the eldest child, Nancy, reached her majority. On March 20, 1964, the court, with consent of plaintiff and Dr. Whitman, reduced the child support to $200 per month, payable $100 on the 10th and 20th of each month until further order of the court. Dr. Whitman paid all child support payments to

June, 1964. He died June 22, 1964, without paying the June, 1964, installment, and probate of his will was commenced. His will devised and bequeathed all of his property to his widow Helen Loretta Whitman. Plaintiff filed a claim in the estate for $15,200 child support, calculated as the projected balance payable under the decree and orders amending the same, during the minority of the remaining two minors, and including $200 for June, 1964. The defendant executrix refused to approve the claim and the present action was filed.

The record reflects that on the date of trial, April 7, 1965, the remaining assets of the estate were $1823 in cash and the dental clinic real property, that the clinic was not rented, was appraised at $35,000 and was encumbered with a $12,000 mortgage with $200 per month payments, which had been temporarily reduced to $125 per month, and the best offer received for it was $22,000 with the mortgage to be satisfied out of this purchase price. The evidence further reflects that as a result of Dr. Whitman's death the plaintiff receives for the benefit of the remaining two minor children the total sum of $237.60 per month from Federal Social Security and the Veterans Administration.

The defendant's answer and the evidence presented the issue of whether, under the circumstances, the child support payments terminated on the death of Dr. Whitman, or survived his death and continued as an obligation to be paid from the assets of his estate.

The lower court found generally for the plaintiff and rendered judgment against the defendant for $11,700, to be paid to the court clerk and by him distributed, $200 per month from June 1, 1964, until November 23, 1965, (age of majority of Paula Jo), and $150 per month from November 23, 1965, to October 2, 1970, (age of majority of Mary Ann), conditioned upon the children attaining the age of 18 years.

Defendant contends the judgment should be reversed on the ground that under the law applicable to the present circumstances

the death of Dr. Whitman automatically terminated the child support order with respect to payments which would have accrued after his death.

The authorities on this proposition of survival of the obligation to pay child support payments accruing after death are in a state of conflict and confusion, as is evidenced in an elaborate Annotation in 18 A.L.R.2d 1126, et seq., and supplemental publications. We are not cited to any decision of this court involving the present factual situation and our research has failed to disclose any.

The record reflects that plaintiff's attorney, who also represented her in the divorce suit, testified there was a protracted period of negotiations with Dr. Whitman and his attorney prior to the divorce relative to the division of the property and the amount of child support Dr. Whitman could pay and it was agreed the child support would be $400 per month. The negotiations were oral and no written agreement was made. He testified that the judge was informed of this and the details of what had been agreed upon were incorporated in the divorce decree. He further testified that the later reductions, supra, in the child support payments were made pursuant to agreement of plaintiff and Dr. Whitman. The divorce decree does not in any way mention or describe any agreement relative to child support.

Our statute, 12 O.S.1961, § 1277, provides, inter alia, that in a divorce action the court shall make provision for the custody and support of the minor children, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action. It is not at all uncommon to insert in divorce decrees that the specified child support shall be paid "until the further order of the court." It appears to us that the use of such phrase is undoubtedly a recognition or reference to the reserved power of the court to modify or change the order.

In any event the result of the negotiations, whether it be called an "agreement" or described by some other term, was incorporated in the decree. We are called upon to determine whether the child support provided in the decree survived the father's death.

Both plaintiff and defendant discuss our decision in Smith v. Funk, 141 Okl. 188, 284 P. 638. In that case the parents entered into a written separation agreement in which the father agreed, inter alia, to pay $50 per month for the support of the children during their minority. In the divorce decree the court granted a divorce to the plaintiff mother, gave her the care and custody of the minor children, ordered the defendant father to pay to the mother the sum of $50 per month for the support and maintenance of each of the children during their minority, and ratified and confirmed the provisions of the separation agreement and made the same a part of the decree as though fully set out therein. Thereafter the father died and the dispute as to whether the obligation to make the child support payments survived the father's death came to this court. The decision held that under these circumstances the obligation set forth in the agreement to pay child support during the minority of the children and incorporated in the divorce decree did survive and was chargeable to the father's estate. Cited in support of this conclusion was the case of Stone v. Bayley, 75 Wash. 184, 134 P. 820, 48 L.R.A.,N.S., 429, in which the obligation was held to survive the death of the father where it was agreed in a written contract that, he would pay monthly child support "to continue during the minority of the child, but to cease upon her earlier death," and that the agreement was to be as binding as though incorporated in the divorce decree. Also cited in support of such conclusion was the case of Murphy v. Moyle, 17 Utah 113, 53 P. 1010, 70 Am.St. Rep. 767, in which it was held that a divorce decree, in the absence of any agreement, which ordered the father to pay a certain sum monthly for the support of the

minor children during their minority, was not discharged by his death, and could be enforced out of his estate for the time of their minority. It appears that of the authorities cited in the decision these are the ones that are most nearly in point and applicable to the factual situation then before the court.

However, the decision in Smith v. Funk cited other decisions which were not in point or appropriate under the facts. We refer to the quote from Creyts v. Creyts, 143 Mich. 375, 106 N.W. 1111, 114 Am. St.Rep. 656, to the effect that death of the husband did not discharge the provision of a divorce decree ordering him to pay monthly child support until the further order of the court. We refer also to the citation of Mansfield v. Hill, 56 Or. 400, 107 P. 471, 108 P. 1007, to the effect that a provision of a divorce decree for monthly child support payments by the defendant did not terminate at his death. Examination of the report of this case (107 P. 471, 472) discloses that the decree directed the defendant to pay monthly child support until the further order of the court, and decreed said sums to be a lien upon defendant's interest in certain lands. We point out that the decree of divorce under consideration in Smith v. Funk did not provide for child support payments "until the further order of the court."

█ It is our conclusion that our decision in Smith v. Funk should be limited and regarded as a holding by this court that when the parents enter into a written separation agreement and the father agrees to pay monthly child support during the minority of the children, and the divorce decree ratifies and confirms the agreement and decrees that the father make monthly payments for the support of the children during their minority, the obligations and rights arising from such judgment survive the death of the father and constitute a continuing claim against the estate. The facts in Smith v. Funk are not the same or even similar to those presented in the instant appeal. The decision in that case is not applicable to the present case.

We now turn to a discussion and determination of defendant's contention.

█ This court has held that an order made by a court pursuant to 12 O.S.1961, § 1277, supra, for the payment of monthly sums over a period of years for the care and custody of minor children does not create a lien on the property of the parent in the absence of an order to that effect. Bussey v. Bussey, 148 Okl. 10, 296 P. 401; Hoffman v. Morgan, 206 Okl. 567, 245 P. 2d 67, 30 A.L.R.2d 1141; and Jones v. Jones, Okl., 294 P.2d 304. The decree in the instant case does not provide for any lien. As a result of this fact and the above rule of law there was no lien impressed on Dr. Whitman's property. The existence of a lien in such cases is a factor some courts use to support the conclusion that the obligation to make child support payments survive the death of the father.

█ As a further preliminary to our conclusion we observe that a testator has great latitude in the final disposition of his estate by will, except as may be otherwise required by statute, and may, if he so desires and has the requisite testamentary capacity, make an unequal distribution of his property among his heirs or give it to strangers. Under the law of this State where it appears from the will that it was the clear intent of the testator to disinherit or exclude his natural children from participation in his estate, such act in itself will not vitiate the will. In re Grove's Estate (Groves v. Groves), Okl., 321 P.2d 381, 385.

█ It is our opinion that the majority of the States and the weight of authority hold that on the death of a parent who has been ordered to make monthly payments for the support of a child such order terminates automatically with respect to payments which would have accrued after death. We believe this to be true, at least, where the court has not, pursuant to the agreement of the parties, in effect ordered that the payments shall not be affected by the par-

ent's death. See Annotation 18 A.L.R.2d 1126, heretofore mentioned.

In the case of Esteb v. Esteb, 138 Wash. 174, 244 P. 264, 246 P. 27, 47 A.L.R. 110, it was held, without citation of authority, that an order to make such payments until the child became of age was effective and required payments to be made only until the parent's death, on the ground that the order was a personal one, requiring the father to pay, and could not be effective as to his estate after death. In Scudder v. Scudder, 55 Wash.2d 454, 348 P.2d 225, the opinion states that the real basis for the decision in Stone v. Bayley, Wash., supra, (cited in our case of Smith v. Funk) was the conclusion of the court that it was the intention of the parties that the obligation of their contract should survive the husband's death. The Scudder case reaffirms Esteb v. Esteb, supra.

In Prime v. Prime, 172 Or. 34, 139 P.2d 550, 558, the decision expressly overrules Mansfield v. Hill, supra. As heretofore stated, the Mansfield case provided for monthly child support until further order of the court. And, in Streight v. Streight's Estate, 226 Or. 386, 360 P.2d 304, the decree required the father to pay $150 per month child support. He remarried and later died leaving a will devising his entire estate to his last wife. Oregon has a statute (ORS 107.100(1) (b)) authorizing the court in a divorce case to require the party at fault to contribute toward the nurture and education of the children. Claim was made against the estate for the monthly child support to majority of the child. The lower court denied the plaintiff mother any relief. In affirming the court adhered to the overruling of the Mansfield case, and stated:

"If we follow plaintiff's argument to its ultimate conclusion, we would find ourselves in the position of circumventing in part the long-established right of testator to make an unrestricted disposition of his estate. To accomplish the end which plaintiff seeks to attain would require a strained and unnatural construction of ORS 107.100(1) (b), the effect of which would be to invest children of divorced parents with a preferred status akin to a mandatory right to inherit from a deceased father, at least to the extent of assured support to and until they attain their majority. Such a privilege is one not enjoyed by children of families where the marital ties have not been dissolved. This we decline to do. If such a change in public policy seems warranted, then its proponents should address the legislature."

This same reasoning was followed in Robinson v. Robinson, 131 W.Va. 160, 50 S.E.2d 455, 458, in which the decree provided for monthly child support payments to "[continue] until the further order of the court." The decision held that after the death of the father the payments did not accrue or mature and could not be enforced against his estate. After discussing the conflict in the decisions, the court held:

"On the other hand, we have the well considered case of Blades v. Szatai, 151 Md. 644, 135 A. 841, 50 A.L.R. 232, decided in 1927, in which it is held 'A father is under a common-law obligation to support his child during latter's minority without regard to a divorce decree prescribing the amount and to whom payable unless it orders that the child be supported by another' and 'A father's obligation to support his child during the latter's minority ceases at the father's death, no matter what the child's age may be, and his estate is not liable for payments accruing thereafter under a divorce decree.' This decision is founded upon the theory that the common-law obligation of a father to support his child ceases upon his death, and that, upon that event, the interest of the child in his estate is based upon the statutory right of inheritance, where the father dies intestate, but subject, of course, to the right of the father to disinherit a child by the execution of a will; and upon the further theory that, to hold otherwise would be to disrupt the general theory of inheritance, prefer one

child over another, and interfere with the common rules firmly established by statute law, governing the descent and distribution of the property of a decedent. '* * * "

Other cases holding that the death of the parent, who has been. ordered to make payments for child support, terminates the order with respect to payments accruing after death, are as follows: Guinta v. Lo Re, 159 Fla. 448, 31 So.2d 704; Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731, 18 A.L.R.2d 1100; Bowling v. Robinson, Ky., 332 S.W.2d 285; Sandlin's Adm'x v. Allen, 262 Ky. 355, 90 S.W.2d 350; Mahaffey v. First National Bank, 231 Miss. 798, 97 So.2d 756, 767; In re Kerby's Estate, 49 Tenn.App. 329, 354 S.W.2d 814; In re Moore's Estate, 34 Tenn.App. 131, 234 S.W. 2d 847, 853 et seq.; Flagler v. Flagler, Fla., 94 So.2d 592; and Cooper v. Cooper's Estate, 350 Ill.App. 37, 111 N.E.2d 564.

The case of Edelman v. Edelman, 65 Wyo. 271, 295, 199 P.2d 840, concludes that the child support payments should survive and be charged to the father's estate. The decision contains a discussion of the divergent view of the various courts and citations of cases. We will not attempt an exhaustive discussion of the authorities cited as sustaining the above conclusion. Some of these cases are apparently based upon contracts that are carried into the divorce decree or upon the fact that a lien was imposed upon the father's property.

Admittedly there is a conflict in the decisions. As. stated, the majority of the authorities hold that in the absence of either a contract or some statutory provision to the contrary, the obligation to make future child support payments terminates with the death of the obligated parent. It is our opinion that the majority rule is the better rule and should be followed by this court.

It is our conclusion that under the circumstances in the present case Dr. Whitman's obligation to pay child support terminated with his death and did not survive and become a charge against his estate.

Finally, there remains the matter of the $200 support payment for June, 1964, that had accrued prior to the death of Dr. Whitman. Defendant admits this is owing and is a valid claim against the estate.

For the reasons stated, the judgment is reversed insofar as it charges the estate with those support payments accruing subsequent to Dr. Whitman's death, and is affirmed as to the June, 1964, payment that accrued prior to his death.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., dissents.