No. 88-122

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
JULIANNE P. PARRISH, formerly
JULIANNE P. APPLETON,

        Petitioner and Appellant,

  and

JERE THOMAS APPLETON

        Respondent and Respondent.

---

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Douglas & Sprinkle; S. Charles Sprinkle, Libby, Montana

    For Respondent:

        Donald L. Shaffer, Libby, Montana

Submitted on Briefs: Sept. 1, 1988

Decided: October 20, 1988

FILED

'88 OCT 20 AM 10 29

CLERK
MONTANA SUPREME COURT

Filed:

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Jere Thomas Appleton (Jere) appeals from the judgment of the District Court of the Nineteenth Judicial District, Lincoln County. The court held it had jurisdiction to enter the original dissolution decree in this case and granted a motion by Julianne P. Parrish, f.k.a. Julianne Appleton (Julie), for increased child support. We affirm the court's decision, but remand for modification of the child support award.

Jere presents four main issues in his appeal:

1. Did the District Court have jurisdiction to enter the original judgment and decree?

2. Has all or part of the judgment for child support arrearage obtained by Julie lapsed or become subject to laches and estoppel?

3. Does the absence of responsive pleadings or briefs require reversal under the Uniform District Court Rules?

4. Was there sufficient evidence to support an increase in child support?

The facts are essentially agreed upon by the parties. Jere and Julie were married in Tennessee in 1965. They had two sons: John in 1966 and Michael in 1967. In early 1972, Julie moved with the two children to Texas. In June of that same year, Jere obtained a default judgment in Tennessee dissolving the marriage. Service of the judgment was made by publication in accordance with Tennessee law.

In September, 1972, Julie and Jere reconciled and began living together in Texas. Julie had not received a copy of the Tennessee divorce decree, and Jere did not tell her about it. Two more children were born: Tim in 1973 and Jenny in 1976. In 1979, the family moved to Montana. Relations

2

between Julie and Jere deteriorated. While it is not clear from the record, it appears that approximately six months after they took up residence in Montana, Julie told Jere she wanted him to leave. She also said she was planning to file for divorce. Jere then told Julie they were already divorced. At some point after this conversation Jere left, taking one of the children with him.

On July 30, 1980, Julie executed a petition for dissolution which was then filed in Montana District Court. The petition referred to the 1965 Tennessee marriage. Notice of the proceeding was personally served on Jere in Tennessee on August 11, 1980. Jere did not appear in the original proceeding, but his attorney wrote to counsel for Julie and informed him that the marriage had been dissolved in 1972. Julie's attorney replied with a letter informing Jere's attorney that Montana recognizes common-law marriage, and that Julie's main goal was to obtain child support from Jere. On October 6, 1980, the District Court granted Julie a decree of dissolution.

In April, 1987, Jere filed a motion in the District Court requesting the 1980 dissolution decree be declared invalid on the grounds that the court lacked jurisdiction, or alternatively, that the decree was obtained through "extrinsic constructive fraud." In June, 1987, Julie filed a motion seeking an increase in child support. Neither party responded to the other's motion. Hearing on the two motions was had on June 22, 1987, and the court issued its judgment on September 10, 1987. This appeal followed.

I.

Jere attacks the District Court's jurisdiction to enter the 1980 decree. He argues: (1) the court never obtained in personam jurisdiction over him under Rule 4B, M.R.Civ.P., (2)

3

the judgment is void because it was pre-empted by the Uniform Reciprocal Enforcement of Support Act (URESA), and (3) the proceeding was void because Julie's petition amounted to "extrinsic constructive fraud."

Rule 4B, M.R.Civ.P., confers in personam jurisdiction to the courts of Montana over "[a]ll persons found within the state of Montana" and all persons whose actions within the state subject them to long-arm jurisdiction. Jere contends he was residing in Tennessee when served with process and took no action that would subject him to long-arm jurisdiction. He argues the District Court therefore lacked in personam jurisdiction to enter a money judgment against him.

A divorce action is generally in rem as to the status of the parties, and in personam as to other matters. Bad Horse v. Bad Horse (1974), 163 Mont. 445, 517 P.2d 893. The District Court therefore did not need in personam jurisdiction to grant the dissolution. Montana law in effect at the time of the 1980 hearing specifically granted jurisdiction to determine custody where the children involved were living within the state. Section 40-4-211, MCA (1979). The District Court therefore had jurisdiction to grant custody of Michael, Tim and Jenny, who were living in Montana in 1980. The District Court was without jurisdiction in 1980 to grant custody of John, who had left Montana with his father and was living in Tennessee. The court was also without jurisdiction to order child support from Jere, as it did not have in personam jurisdiction over him under Rule 4B, M.R.Civ.P.

In 1985, Julie initiated a URESA action in Montana to obtain payment of child support. Under URESA, she was able to seek the assistance of Tennessee courts in obtaining support. Jere argues the URESA proceedings pre-empted the

4

District Court, because jurisdiction over the divorce had become vested in a Tennessee court. This argument is without merit. URESA, as adopted in Montana and Tennessee, provides:

> The remedies herein provided are in addition to and not in substitution for any other remedies.

Section 40-5-104, MCA; see, § 36-5-203, TCA.

Jere's final attack on the District Court's jurisdiction asserts the decree was obtained through extrinsic constructive fraud. He points out Julie's pleading was based on the 1965 marriage, yet did not mention the Tennessee divorce decree. No allegation of common-law marriage was made, nor was there any mention of Jere's Tennessee residency. Jere argues these errors and omissions, while not intentionally fraudulent, worked fraud upon the court by alleging a legal marriage that did not exist. He asserts a court sitting in equity has inherent power to grant relief from a judgment obtained through fraud, citing Selway v. Burns (1967), 150 Mont. 1, 429 P.2d 640.

A court hearing a divorce action sits in equity. Johnson v. Johnson (1960), 137 Mont. 11, 349 P.2d 310. However, a well-established tenet of equity is that one who seeks equity must do equity. Barbour v. Barbour (1958), 134 Mont. 317, 330 P.2d 1093.

Julie's 1980 dissolution petition was indeed based on the 1965 marriage; did not mention the Tennessee divorce decree; and listed the address of all family members as Libby, Montana. The petition was nonetheless made in good faith. Jere had concealed the existence of the Tennessee decree from Julie for nearly eight years. His disclosure, when it finally came, was made in response to Julie's statement that she was contemplating filing for divorce.

5

Given her lack of actual notice of the Tennessee decree, it is understandable that Julie might not believe Jere.

As to the addresses, the petition was filed on August 1, 1980. Jere was found and service effected on him in Tennessee on August 11, 1980. According to the affidavit of John, the eldest child, he and his father left Montana some time in August. When the petition was filed, Julie knew of no address for Jere other than his most recent one in Libby.

Jere and Julie were married when Julie filed her petition in District Court. They had been living together and holding themselves out as husband and wife in Texas and in Montana. A common-law marriage therefore existed between them under § 26-1-602(30), MCA. Spradlin v. U.S. (D.C. Mont. 1967), 262 F.Supp. 502. The District Court noted in its conclusions of law from the 1987 hearing:

> Whether or not the parties intended to resume the formalized marriage or to create a new marriage by common law is irrelevant since the only prerequisite to a Montana dissolution decree is that a marriage of some form existed between the parties.

Given Jere's own acts of deceit and Julie's good faith in pleading, we see no reason to grant Jere equitable relief by voiding the 1980 decree.

Finally, we note Jere appeared through counsel at the 1987 hearing. At that point, the court obtained in personam jurisdiction over him. Rule 4B(2), M.R.Civ.P. We have held a District Court can award child support retroactively when the issue is properly before the court pursuant to the parties' pleadings. In re Marriage of DiPasquale (Mont. 1986), 716 P.2d 223, 225, 43 St.Rep. 557, 559. However, no issue of retroactive support was before the court in this case. Julie's motion for modification sought an increase in

6

support to $200 per month, but did not seek support retroactive to 1980. Therefore, the only issue of child support before the court at the 1987 hearing was whether Julie was entitled to payments of $200 per month.

We affirm the District Court's decision that it had jurisdiction in this matter, and its award of $200 per month in child support beginning in 1987. However, we hold the court was without in personam jurisdiction to award child support in 1980, and could not in 1987 make an award of retroactive support when it was not sought in the pleadings.

## II.

Jere next argues the District Court's award of arrears in child support has lapsed, or is subject to laches and estoppel. This argument is rendered moot by our determination above that the court could not award child support for periods prior to 1987.

## III.

Jere points out no pleading was filed in response to his motion to void the 1980 decree, nor any brief filed in support of Julie's motion for modification of child support. He argues the Uniform District Court Rules (UDCR) therefore dictate his motion should be deemed "well-taken," and Julie's deemed "without merit."

Julie filed an affidavit in support of her motion, but filed no brief. Jere, however, did no better. His motion was also supported only by an affidavit. While Jere's affidavit was labeled "Brief in Support of Motion," it contained nothing more than his sworn statement. Neither party responded to the other's motion. Accepting Jere's argument would lead to the absurd conclusion that the court

7

had before it two motions deemed well-taken, and at the same time without merit.

Pursuant to Rule 2, UDCR, the District Court held oral argument on both motions. This gave Jere and Julie an opportunity to argue in support of their own motion and against each other's motion. The court followed a wise course, and we see no reason to overturn its decision on technical grounds.

## IV.

Finally, Jere argues there was not sufficient evidence to support an increase in child support. Because we held above the District Court's award of support in 1980 was void, discussing modification of that award would be illogical. We will therefore treat the court's 1987 award of $200 per month as an initial child support award rather than a modification.

The District Court has authority to require either or both parents to pay "reasonable or necessary" child support. Section 40-4-204, MCA. An award of child support made by the District Court will not be overturned unless there has been a clear abuse of discretion resulting in substantial injustice. In re Marriage of Alt (Mont. 1985), 708 P.2d 258, 42 St.Rep. 1621.

The record contains affidavits, pleadings and written testimony from the URESA action, and the Tennessee judgment obtained by Julie directing Jere to pay child support. The combination of these documents and Julie's testimony at the 1987 hearing shows her earning power, financial resources and liabilities; the needs of her children; and the determination of another court that she is entitled to $200 per month in support. Given this evidence, the District Court did not abuse its discretion by awarding child support of $200 per month.

8

We affirm the decision of the District Court, but remand the case to have stricken that portion of the judgment awarding retroactive child support for periods prior to 1987.

_R. C. McDonough_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison._

_John C. Sheehy_

_L. C. Gulbrandson._
Justices