No. 88-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

IN RE THE MARRIAGE OF
JAN M. HARPER (DEGRAFF),

        Petitioner and Appellant,

and

WILLIAM B. HARPER,

        Respondent and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marcia Birkenbuel, Great Falls, Montana

    For Respondent:

        Joan E. Cook, Great Falls, Montana

Submitted on Briefs: Sept. 23, 1988

Decided: December 1, 1988

Filed:

FILED
'88 DEC 1 AM 10 34
CLERK MONTANA SUPREME COURT

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves disputed child visitation rights under a dissolution decree. Jan M. Degraff, f.k.a. Jan M. Harper (Jan), appeals from an order of the District Court of the Eighth Judicial District, Cascade County. The District Court ordered: (1) Jan must keep her former husband William B. Harper (William) informed of the current address and telephone number for herself and the couple's minor child; (2) Jan must allow William unrestricted telephone access to the child and reasonable visitation consistent with the original dissolution decree in this case; and (3) should Jan continue her attempt to prevent William from speaking with, visiting or knowing the whereabouts of the child, William will be relieved of his obligation to pay child support. We reverse and remand.

Jan presents three issues for review:

1. Did the Montana District Court have jurisdiction to make a determination regarding visitation with the parties' minor child?

2. Did the District Court err in conditioning William's obligation to pay child support upon Jan's compliance with the court's visitation order?

3. Did the District Court err in refusing to consider Jan's request for an increase in child support and for an order directing payment of the child's medical and drug expenses?

In 1979, Jan obtained a decree dissolving her marriage to William. At the time, she was living in Great Falls with William and their minor child, William B. Harper II. Custody of the child was awarded to Jan. William was granted "reasonable" visitation rights specified in the decree, and

ordered to pay child support of $125 per month. Jan subsequently remarried, and in 1981 she moved with the child and her new husband to New York. She testified before the District Court in the present action that she informed William in advance of her intent to move to New York. William testified that he was not given an address or telephone number when Jan left.

Jan and the child left New York in 1983 and moved to Colorado, where they still reside. She did not advise William of this move because, according to Jan, she did not know where he was. William also moved after the dissolution, living in Washington and Idaho before returning to Great Falls, where he is currently a resident. William maintains he has been denied visitation since 1981, although he has tried to locate Jan and the child several times. Jan admits she refused a visitation request from William while living in New York in 1982, because she wanted to take the child to a funeral being held out of the state.

On March 5, 1988, William was served with process in an action brought by Jan under the Uniform Reciprocal Enforcement of Support Act (URESA) seeking past due child support payments. Having thus discovered where Jan was living, William then moved the District Court for an order directing Jan to appear and show cause why she should not be held in contempt for failing to allow visitation under the original decree. The order was issued on March 10, 1988.

A hearing was held on March 22, 1988, at which Jan made a "special appearance" challenging the court's jurisdiction to determine the visitation issue. She also sought two court orders: one to require William to pay her attorney's fees and costs, and a second to modify child support. The court refused to hear testimony on Jan's request for modification of support. The order directing Jan to allow visitation or

lose child support was issued on March 24, 1988. This appeal followed.

William raises a threshold question in his brief. He argues that Jan is attempting to appeal a contempt order, which is not allowed. Section 3-1-523, MCA, states contempt orders are final and conclusive, and may not be appealed. Review may be had only on a writ of certiorari by this Court. We have held this statute applicable in dissolution cases. In re Marriage of O'Neill (1979), 184 Mont. 415, 603 P.2d 257.

Jan was not held in contempt by the District Court. The court's order directed her to honor the visitation terms of the original decree in this case, but did not find her in contempt of court or impose a contempt penalty. The order is appealable to this Court.

Jan argues that under the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA) as adopted in Montana, the District Court was without jurisdiction to render its order. Montana's version of the UCCJA is found at §§ 40-7-101, et seq., MCA. Section 40-7-102, MCA, lists the general purposes of the UCCJA, including:

> ...
> (c) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

Under § 40-7-103, MCA, visitation rights are included in the definition of matters encompassed by a custody proceeding.

The specific section cited in support of Jan's argument is § 40-7-104, MCA. That section is entitled "Jurisdiction,"

4

and incorporates § 40-4-211, MCA, to set forth the jurisdictional requirements under the UCCJA:

(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(a) this state:

(i) is the home state of the child at the time of commencement of the proceedings; or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this state; or

(b) it is in the best interest of the child that a court of this state assume jurisdiction because:

(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and

(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(c) the child is physically present in this state and:

(i) has been abandoned; or

(ii) it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

(d)(i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

(ii) it is in his best interest that the court assume jurisdiction.

(2) Except under subsections (1)(c) and (1)(d) of this section, physical presence in this state of the child or of the child and one of the contestants is not alone sufficient to confer

5

jurisdiction on a court of this state to make a child custody determination.

(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

(4) A child custody proceeding is commenced in the district court:

(a) by a parent, by filing a petition:

(i) for dissolution or legal separation; or

(ii) for custody of the child in the county in which he is permanently resident or found; ...

At the hearing held pursuant to the show cause order, the District Court held these requirements did not apply to this action. The court relied instead on its continuing jurisdiction to enforce the original decree.

We addressed the question of continuing jurisdiction in relation to the UCCJA in In re Marriage of Bolton (Mont. 1984), 690 P.2d 401, 41 St.Rep. 1698. While Bolton involved a modification of custody, the distinction between modification and enforcement of custody in a case such as this is superficial. Preserving such a distinction would defeat the purposes set out in § 40-7-102, MCA.

In Bolton, we applied a two-part test for the exercise of jurisdiction. The first step requires that the jurisdictional requirements set out above be met before a court can assert continuing jurisdiction in a custody proceeding. If the requirements are met, the second step requires that the court determine whether it should exercise its jurisdiction using the criteria found at § 40-7-108, MCA. This determination is within the court's discretion. Bolton, 690 P.2d at 405.

We hold the District Court was incorrect in concluding that the UCCJA jurisdictional requirements did not apply to this case. Section 40-7-102, MCA, states the UCCJA was enacted in Montana to deal with custody proceedings involving residents of different states. Under § 40-7-103, MCA,

6

custody proceedings settle questions of visitation rights. Jan and the child reside in Colorado, William resides in Montana and the subject of this action is William's right of visitation.

We remand for a determination of jurisdiction under the test applied in Bolton. If on remand the court determines it has jurisdiction and decides to exercise that jurisdiction, we feel compelled to note two factors that should be considered in the court's decision on the merits.

First, we note the final sentence of § 40-5-124, MCA:

> The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by the court.

Conditioning the obligation to pay child support upon non-interference with visitation rights would be error under this statute. Second, once the court asserts continuing jurisdiction, it can hear argument on the question of child support. Continuing jurisdiction applies to child support as well as custody. In re Marriage of Ensign (Mont. 1987), 739 P.2d 479, 44 St.Rep. 1146.

Furthermore, the court can still address the child support issue if it determines it does not have jurisdiction to hear the visitation issue. Modification of child support is not subject to the jurisdictional strictures imposed on custody proceedings under the UCCJA. Child support provisions in a dissolution decree can be modified under § 40-4-208, MCA. Jan's motion in response to the show cause order effectively petitions for an increase in child support. Because William resides in Montana, the court has in personam jurisdiction over him and can increase his obligation of child support if it so decides. See In re Marriage of Appleton (Mont. 1988), ___ P.2d ___, 45 St.Rep. 1959.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8