**DEPARTMENT OF HUMAN SERVICES
ex rel. Deborah Ann PAVLOVICH
Now Hagar, Appellant,**

v.

**Joseph William PAVLOVICH, Appellee.**

No. 82363.

Supreme Court of Oklahoma.

June 4, 1996.

Rehearing Denied Jan. 29, 1997.

James B. Martin, McAlester, for Appellant.

Warren Gotcher, Gotcher, Brown, Bland, & Belote, McAlester, for Appellee.

ALMA WILSON, Chief Justice:

 The issue presented to this Court is whether Oklahoma may enter its own support order under the Oklahoma Uniform Reciprocal Enforcement of Support Act (URESA)[1] raising or lowering the amount set by a judgment for child support issued by a court of a sister state. We answer that URESA does permit such an order.

The appellant, Deborah Ann Pavlovich, now Hagar, and the appellee, Joseph William Pavlovich, were divorced in Alabama on November 25, 1987. The decree granted the appellant custody of their seven-year-old daughter, and ordered the appellee to pay child support. The appellant and the child subsequently moved to West Virginia, where they currently reside. The appellee is now an Oklahoma resident.

On July 18, 1992, the KiBois Child Support Enforcement Unit of the Oklahoma Department of Human Services, acting on behalf of the appellant, registered the Alabama decree in the District Court of Pittsburg County, Oklahoma, pursuant to 43 O.S.1991, § 338. In December of the same year, KiBois filed a motion to modify the decree, on behalf of the appellant, seeking to increase the child support obligation. In response, the appellee moved to dismiss based upon lack of jurisdiction and improper venue. The district court granted the motion to dismiss, finding that while the foreign decree was properly docketed, URESA did not provide for modification of the amount of child support under the facts of this case. On appeal, the Court of Appeals reversed and remanded. We have previously granted certiorari.

## I. URESA PERMITS OKLAHOMA TO SET CHILD SUPPORT IN A DIFFERENT AMOUNT THAN THAT SET BY THE FOREIGN ORDER.

The appellant's argument is very brief. She asserts that upon proper registration, a foreign decree becomes the equivalent of an Oklahoma decree, and cites 43 O.S.1991, § 343(a) as support. She continues, that an Oklahoma decree is always subject to modification of support amount during the minority of the child, and cites 12 O.S.A. § 1277, now recodified at 43 O.S.1991, § 112(A)(3), and *Whitman v. Whitman*, 430 P.2d 802 (Okla. 1967). *Whitman* holds, after citing 12 O.S. 1961, § 1277, that the court reserves the power to modify or change a child support order. *Whitman*, 430 P.2d at 805.

 This Court has already held that Oklahoma courts may modify foreign support alimony obligations. *Mullis v. Mullis*, 669 P.2d 763, 764–765 (Okla.1983). In *Mullis*, the former wife attempted to use URESA to enforce her support alimony award against her husband who was residing in Oklahoma. He sought affirmative relief by filing a motion to reduce the alimony claiming changed circumstances. On the day of the hearing, the former wife filed a motion to dismiss without prejudice, but the trial court modified the order, and found that the former husband would not be obligated to pay any further alimony. The former wife appealed asserting that her voluntary dismissal terminated the trial court's jurisdiction over the subject matter of her URESA petition. This Court held that her dismissal did not divest the trial court of jurisdiction over the remaining issue of the former husband's motion to reduce future support. *Mullis*, 669 P.2d at 765. *Mullis* construed 12 O.S.1981, § 1600.28[2] as providing that the court in the

---

1. 43 O.S.1991, § 301 et seq., repealed effective 9/1/94. Enforcement of foreign support orders is now made pursuant to the Uniform Interstate Family Support Act, 43 O.S.Supp.1994, § 601–101 et seq. At the time this Court granted certiorari, URESA was the prevailing law. Statutes and statutory amendments are presumed to operate prospectively, which presumption is rebutted only where the intention of the legislature to give the statutes a retrospective effect is expressly declared or necessarily implied from the language of the statutes. *Kluver v. Weatherford*

*Hosp. Authority*, 859 P.2d 1081, 1083 (Okla. 1993). We find no cause to give UIFSA a retrospective effect.

2. Title 12 O.S.1981, § 1600.28 provided: "A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise spe-

responding state may fix the support payment at a different amount than that specified by a decree of a sister state. *Mullis*, 669 P.2d at 764. We observed that the majority of jurisdictions hold that modification of future obligations is permitted if the responding court finds the modification justified. *Mullis*, 669 P.2d at 764. A responding court under URESA should be allowed to consider the totality of the circumstances, especially since the court must first determine whether a duty to support even exists. *Mullis*, 669 P.2d at 764.

In *White–Nathan v. Nathan*, 181 Ariz. 112, 115, 888 P.2d 237, 240 (Ariz.Ct.App.1994), the court observed that the vast majority of courts hold that under these reciprocal enforcement of support acts the responding court may enter its own support order prospectively raising or lowering the amount of the support obligation, if the circumstances before it warrant such a change. The case cites *Thompson v. Thompson*, 366 N.W.2d 845 (S.D.1985) as support.

In *Thompson*, a Wyoming district court had awarded the former wife $400 a month in child support for two children in May of 1977. The former husband did not begin his payments until October 1978, because the couple had continued to live together. But he paid only $300 per month to his former wife. When he moved to South Dakota he reduced his support payments to $200 per month, which he paid from unemployment compensation. Subsequently, the former wife moved to South Dakota, and filed a complaint under South Dakota's Revised Uniform Reciprocal Enforcement of Support Act (RURESA). The former husband then responded with a motion to modify asking for a

reduction in the child support obligation from $400 to $150 because of a substantial change in his earning capacity, and other factors. The trial court denied the motion to modify, finding that it could not modify a Wyoming judgment, and ordering that the $400 a month support obligation continue pursuant to the Wyoming decree. *Thompson*, 366 N.W.2d at 846–847.

The Supreme Court of South Dakota cited two statutes. The first was identical to our 12 O.S.1981, § 1600.28, cited in *Mullis*, 669 P.2d at 764, ft. 1.[3] The second was the provision that "The remedies herein provided are in addition to and not in substitution for any other remedies."[4] The South Dakota court concluded that under these provisions, new support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy. *Thompson*, 366 N.W.2d at 847. The court concluded that the two statutes empowered their circuit courts to make an independent and de novo determination of the proper amount of prospective child support payments based on the circumstances before the court. The Supreme Court of South Dakota affirmed the circuit court's determination of arrearages, but reversed concerning the current duty of support, and remanded for a hearing consistent with its ruling.

We agree with the Supreme Court of South Dakota. URESA permits a de novo determination of the proper amount of prospective child support payments based on the circumstances before the court. Such a result is anticipated by *Mullis*.

cifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." In 1987 another sentence was added between the two above, which read: "Past due amounts which have accrued pursuant to a child support order made by a court of this state pursuant to this act or any other law, or by another state pursuant to a substantially similar act or any other law, shall not be modified retroactively or payment of all or a portion of the past due amount waived by a court of this state pursuant to this act, except by

mutual agreement of the obligor and the person or entity entitled to the child support." 1987 Okla.Sess.Laws, ch. 230, § 17. In 1990, this section was renumbered in title 43, section 332. 1990 Okla.Sess.Laws, ch. 188, § 3.

3. The only difference between the two statutes is that the South Dakota statute has "pursuant to this chapter" in the first sentence instead of "pursuant to this act."

4. Before repeal, this section was found codified in title 43, section 304 of our statutes. It had remained unchanged since enacted in 1953.

## II. URESA CONTEMPLATES NEITHER CUSTODY NOR VISITATION ISSUES.

██ The basic argument of the appellee is that fundamental fairness requires that he be allowed to present evidence to modify custody or visitation if the appellant is allowed to modify child support obligations. He is concerned that child support enforcement through URESA does not give Oklahoma courts jurisdiction over the person of the appellant, and that the attorney for KiBois is limited in his authority to represent the appellant. He asserts that Oklahoma courts should not exercise jurisdiction to hold a hearing to increase child support, since the appellee does not have mutual and reciprocal rights to have the same relief. He concludes that the home state of the appellant, West Virginia, is the proper forum to litigate the amount of child support.

The appellee is incorrect that he does not have mutual and reciprocal rights to the same relief. If a child support obligation may be prospectively changed by a responding court in a URESA action, it is clear that it may be decreased as well as increased. Such is the teaching of both *Mullis* and *Thompson.* But there are strong policy reasons for denying an obligor the right to litigate custody or visitation issues in a URESA action.

██ The purposes of URESA are stated in 43 O.S.1991, § 302, that is, to improve and extend by reciprocal legislation the en-

forcement of duties to support and to make such law uniform. The introductory comment to the new Uniform Interstate Family Support Act (UIFSA) asserts that one in four children in the U.S., more than ten million children, grows up in a single-parent household. Support is crucial to sustaining family life, and often to escape poverty. But interstate jurisdictional conflicts have often been a refuge for those hoping to avoid paying child support, and conflict between jurisdictions stands as a serious impediment to the enforcement of a support order.[5] With such problems facing American courts attempting to enforce child support orders, URESA was enacted in all fifty states.[6]

██ URESA was designed to provide an inexpensive, simplified and effective means for an obligee in one state to enforce the duties of support owed by an obligor in another state. *Clarkston v. Bridge,* 273 Or. 68, 71, 539 P.2d 1094, 1096 (1975). The proceeding makes travel by the obligee to the state of residence of the obligor unnecessary. *Lefler v. Lefler,* 218 Or. 231, 235, 344 P.2d 754, 756 (1959). The prosecuting attorney under URESA is the public official in the appropriate place who has the duty to enforce criminal laws relating to the failure to provide for the support of any person. 43 O.S.1991, § 303(h). In Oklahoma, that allows the Department of Human Services, through district attorneys and contract attorneys, to enforce and collect child support, and even to petition to modify any order for support.[7] With the purpose of URESA be-

---

5. "Oklahoma Introductory Comment on the Uniform Family Support Act," (UIFSA), 43 O.S.Supp.1994, §§ 601–101 et seq. UIFSA has now replaced URESA.

6. *Ibid.*

7. 1977 Okla.Sess.Laws, ch. 170, § 1, codified at 56 O.S., § 237, now 56 O.S.Supp.1994, § 237, provides that the Department of Human Services (DHS) shall be the single state agency designated to administer a statewide plan for child support, and providing for collection of such support. The 1992 Okla.Sess.Laws, ch. 153, § 3, codified at 56 O.S.Supp.1994, § 237.3 provides that DHS may contract with attorneys acting for DHS, which attorneys are not authorized to accept service for any party other than DHS, and that providing services does not create an attorney-client relationship with any other party. DHS' employment of KiBois is expressly permissible

under Oklahoma law. Spending public funds in aiding an obligee to enforce support payments is analogous to, and as much a public purpose as, relief expenditures to needy individuals. *Duncan v. Smith,* 262 S.W.2d 373 (Ky.1953). If a state attorney is required to maintain criminal prosecution for non-support, no legal impediment exists to forbid civil liability for support as well. Free legal aid in support matters is for the benefit of the public as a whole, to protect the public fisc by alleviating the potential for the burden of support. The reciprocal act protects Oklahoma obligees by providing such legal aid to residents of other states, in exchange for those states providing aid to our citizens. Article X, § 14 of Oklahoma's Constitution provides that state appropriations must be for a public purpose in order to be valid. Public purpose has been defined by this Court as synonymous with "government purpose." *State ex rel. Lacy v. Jackson,* 682

ing enforcement of support, and with a view toward keeping expenses down while accomplishing this end, obligors have been bound regardless of the presence or residence of the obligee. *Phillips v. Phillips*, 336 Mass. 561, 563, 146 N.E.2d 919, 920 (1958). Section 305 of URESA makes just such a rule.[8] A case can be proven out of the mouth of the obligor without the necessity of the presence of the obligee. *Phillips*, 336 Mass. at 564, 146 N.E.2d at 921.

Section 333 of Oklahoma's URESA provides: "Participating in any proceedings under this act shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding." In construing this identically-worded statute in *Thompson v. Kite*, 214 Kan. 700, 522 P.2d 327 (1974), the Supreme Court of Kansas observed that the goal of URESA was to provide a prompt, expeditious way of enforcing the duty to support minor children without getting the parties involved in other complex, collateral issues. *Thompson*, 214 Kan. at 703, 522 P.2d at 330. The court further reasoned that the purpose of its statute, worded identically to 43 O.S.1991, § 333, "was to enable parties to participate freely in reciprocal proceedings without exposing themselves to the danger of submitting to the jurisdiction of the responding court in other independent proceedings involving collateral matters." *Thompson*, 214 Kan. at 703, 522 P.2d at 330.

Although this Court has not construed § 333, the Court of Appeals did in *Waldmann v. Waldmann*, 567 P.2d 532 (Okla.App. 1977). *Waldmann* additionally construed § 323, which provides in pertinent part that, "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by court." That *Waldmann* court held that jurisdiction to change custody must be based upon some other jurisdictional basis, and not upon a cause of action for support pursuant to URESA. *Waldmann*, 567 P.2d at 535.

This holding is consistent with the holdings of the high courts of sister states.

The Supreme Court of Montana, relying on its versions of URESA and the Uniform Child Custody Jurisdiction Act (UCCJA), held that conditioning the obligation to pay child support upon non-interference with visitation rights would be error. That court based its holding on the construction of its statute that is identically worded to the quoted portion of 43 O.S.1991, § 323. The court further held that the trial court must determine jurisdiction over custody and visitation based upon the UCCJA, but that the trial court could still determine the child support issue because modification of child support was not subject to the jurisdictional strictures imposed on custody proceedings under the UCCJA. *In re Marriage of Harper*, 235 Mont. 41, 47, 764 P.2d 1283, 1287 (1988).

The Supreme Court of South Dakota has held that a custodial parent's failure or refusal to provide a noncustodial parent with visitation rights may not be raised as an equitable defense in a URESA action. *Todd v. Pochop*, 365 N.W.2d 559 (S.D.1985). That court also cited as authority its statute that is identical to 43 O.S.1991, § 323. The court noted that its holding followed the majority rule among the states. The court observed that URESA must remain procedurally and substantively streamlined. Support obligations would be impaired if matters of custody, visitation, or a custodial parent's contempt were considered by the responding court. The court further noted that permitting the resolution of other family matters in a URESA proceeding could deter persons from invoking URESA. *Todd*, 365 N.W.2d at 560.

Where a trial court in Vermont, and pursuant to URESA accepted a stipulation from the parties concerning support and visitation, the Vermont Department of Social Welfare, on behalf of the obligee, and the Department of Social Welfare of the State of Maryland, which was the assignee of child support from

---

P.2d 218 (Okla.1983). Oklahoma has a pecuniary interest in child support enforcement regardless of whether the custodial parent is a recipient of public assistance. *Haney v. State*, 850 P.2d 1087, 1091 (Okla.1993).

8. "Duties of support arising under the law of this state bind the obligor, present in this state, regardless of the presence or residence of the obligee." 43 O.S.1991, § 305.

the obligor, moved to vacate those portions of the district court's order relating to visitation and tying the obligation of support to visitation. After considering Vermont's identically-worded version of 43 O.S.1991, § 323, the district court determined that it had not had jurisdiction to issue its prior order relating to visitation, or tying support payments to visitation, as such was beyond the scope of URESA. After citing the statute, the Supreme Court of Vermont held that the provision specifically separates the obligation of support from any other right or obligation concerning custody or visitation. *Hood v. Hood,* 146 Vt. 195, 197, 499 A.2d 772, 774 (1985).

Citing the same URESA provisions, the Supreme Court of Wisconsin held that even though the mother, the custodial parent and obligee, had removed the child from Wisconsin to California without the court's permission, and the obligor had gone to California to participate in a custody and visitation hearing, the illegal removal of the child from Wisconsin was no defense to a URESA action. This was true even though a Wisconsin court had previously determined that it had jurisdiction, and given custody to the father. *State ex rel. Hubbard v. Hubbard,* 110 Wis.2d 683, 329 N.W.2d 202 (1983). The court held that matters of custody, visitation, or a parent's contempt of court are not valid as defenses or counterclaims in a URESA action. *Hubbard,* 329 N.W.2d at 207.

 Accordingly, URESA empowers the district court to make an independent and de novo determination of the proper amount of prospective child support payments based on the circumstances presently before the court;[9] it does not provide jurisdiction over the obligee for purposes of deciding child custody or visitation; and properly permits public funds to be used to prosecute child support enforcement. Certiorari having previously been granted, the opinion of the Court of Appeals is VACATED, and the judgment of the trial court is REVERSED AND REMANDED to consider modification of child support.

KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, and SUMMERS, JJ., concur.

OPALA, J., concurs in part and dissents in part.

HODGES, and WATT, JJ., dissent.

---

9. UIFSA appears to change this scheme. The introductory comment to UIFSA, section A, subsection 3, under the title "Continuing Exclusive Jurisdiction" notes that 43 O.S.Supp.1994, § 601–205 is the most important feature of UIFSA. That section provides that the tribunal issuing a support order retains exclusive jurisdiction over the order for purposes of modification so long as the state remains the residence of the obligor, the individual obligee, or the child. Section 601–207 provides rules to determine, where there are multiple orders, which order to recognize for purposes of continuing exclusive jurisdiction. Section 601–603(C) provides "Except as otherwise provided in this article, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction."

Section C of the comments "Enforcement and Modification of Support Orders," subsection 3 "Registration and Modification of Support Orders" provides that when modification of a child support order is sought in a state other than the issuing state, it must be registered in the state where modification is sought. After the order is registered, the responding state may modify it if "(1) the child, the individual obligee and the obligor do not reside in the issuing state; (2) the petitioner who is a non resident of this state seeks modification, and (3) the respondent is subject to personal jurisdiction of responding court." See § 601–611 "Modification of child support order of another state." Section 601–611 also provides that the order may be modified if an individual party or the child is subject to the personal jurisdiction of the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the support order and assume continuing, exclusive jurisdiction over the order.