## CLARK v. ARMSTRONG & MURPHY.

No. 25941. June 22, 1937.

Rehearing Denied Sept. 14, 1937.

Ram Morrison, for plaintiff in error.

John Barry, for defendants in error.

OSBORN, C. J. This action was instituted in the district court of Oklahoma

county by James R. Armstrong and W. L. Murphy, copartners, engaged in the practice of law under the firm name of Armstrong & Murphy, hereinafter referred to as plaintiffs, against C. S. Clark, hereinafter referred to as defendant, wherein plaintiffs sought to recover an attorney's fee in the sum of $2,500 for legal services rendered to the Clark Pipe Line Company, a corporation, which plaintiffs alleged was controlled and dominated by the defendant, who owned a majority of the stock in said corporation. The cause was tried to the court, and judgment was entered in favor of plaintiffs, from which defendant has appealed.

This is an action in equity. There was some conflict in the evidence, but the trial court in its findings of fact determined these issues of fact in favor of plaintiffs. An examination of the entire record discloses that the findings are reasonably sustained by competent evidence, and will therefore be adopted for the purpose of determining the issues of law involved herein.

It was found that the Clark Pipe Line Company was organized by Frank Clark; that 500 shares of stock in said company were issued; that on December 3, 1932, Frank Clark was the owner of all of said stock except two shares; that shortly prior to December 3, 1932, said company was pressed for finances; that an arrangement was made with defendant, C. S. Clark, to loan the company $5,000, and as security for said loan 51 per cent. of the capital stock was transferred to him; that said defendant was the owner of 51 per cent. of said stock at all times thereafter subsequent to the date of the trial. Prior to February 15, 1933, certain suits were filed against the company; on March 10, 1933, a contract was made with plaintiffs to defend said company in said suits. On account of the precarious financial condition of the company, plaintiffs demanded some security or guaranty of their fee. They requested the defendant to guarantee payment of the fee, and he refused to do so, but an arrangement was entered into with the company through its officials, with the acquiescence and consent of the defendant, that plaintiffs would be paid out of the first collections received by the company from certain outstanding accounts. The agreement is evidenced by a

letter dated March 10, 1933, which we quote as follows:

"Armstrong & Murphy
  "Attorneys at Law
    "Hales Building
      "Oklahoma City, Oklahoma

"Gentlemen:

"In consideration of services performed and to be performed in the district court of Oklahoma county in the following cases, to wit: Harrell-Davis Oil Company v. Clark Pipe Line Company, No. 78621, Pribyl et al. v. Clark Pipe Line Company et al., No. 78344. We hereby agree to pay as attorney's fee the sum of $2,500.00. to be paid out of the company's first collections.

"Yours very truly,
"Clark Pipe Line Company,
"By B. D. Hite, President."

It further appears that the trial court found that prior to this date the original loan from defendant to the company had been paid in full, but thereafter and on March 20, 1933, defendant made a loan to the company of $5,000, and on March 22, 1933, took an assignment from the company on the Cushing Gasoline & Sales Company for certain funds then due the company; that said Cushing Gasoline & Sales Company refused to recognize the assignment and made two checks in the total sum of $6,011.13 payable to the pipe line company, which were endorsed by the officials of said company to the defendant, and that he received the money represented by the two checks. Said defendant later received the sum of $1,620 from the Columbia Refining Company, another debtor of the pipe line company. After entering its findings of fact, the trial court entered conclusions of law which are, in part, as follows:

"The corporation, Clark Pipe Line Company, at the time of making the contract with the plaintiff, had due and owing it, already fully earned, past due but unpaid, the sum of $7,500, due from one or two parties, and that was promised to plaintiffs to be used to pay them the $2,500 contracted for. Upon that promise plaintiff's relied and rendered the service contracted.

"The defendant Clark refused and declined personally to guarantee in writing the contract, but at the time of making the contract he did orally agree that if the plaintiffs would render the service he would see plaintiffs paid their claim from such funds when collected from the then

existing creditors in the sum of $7,500, then due the corporation.

"The defendant Clark was the owner of 51 per cent. of the stock of the Clark Pipe Line Company, the corporation, and benefited by plaintiffs' services. He knew of all of this when he loaned the corporation $5,000 on or about March 20, 1933, and on March 22, 1933, took an assignment from the corporation on the Cushing corporation to pay him the amount of their indebtedness, as later evidenced by two checks, but the Cushing corporation ignored the assignment and made its payments by checks to the Clark Pipe Line Company, and it, in turn, through its corporate officials, caused the two checks to be paid to the defendant Clark, to the detriment of plaintiffs.

"The defendant Clark is equitably estopped, after full knowledge of the contract between plaintiffs and Clark Pipe Line Company and he himself participating therein and agreeing to see plaintiffs paid from this collection, and he receiving benefits from the services of the plaintiffs to the defendant pipe line company, to subsequently collect or receive all of said $7,500 fund and now deny liability to plaintiffs for the amount of their claim of $2,500. * * *

"The fact that at the time of the employment of plaintiffs by the corporation; that at the time the corporation had positively earned and had due it from certain creditor or creditors $7,500; that payment was expected daily; that the Clark Pipe Line Company promised to pay plaintiffs out of this fund the first money collected and received to induce plaintiffs to continue to represent it and the defendant Clark; that that promise was relied upon by plaintiffs; that they rendered the service contracted for; that the defendant Clark knew of the contract and agreed to same, would establish and give to plaintiffs an equitable right or lien on this fund when collected to the extent of their claim of $2,500."

The trial court thereupon entered judgment in favor of plaintiffs in the sum of $2,500.

In the case of Rutherford National Bank v. H. H. Bogle & Co. (N. J. Eq.) 169 Atl. 180, it was said:

"The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt, is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made. This wholesome equitable principle is one of wide, if not universal, recognition and application." (Citing cases.) * * *

"The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge, or pledge property, real or personal, as security for an obligation, appears, and the property or thing intended to be given, charged, or pledged is sufficiently described or identified, then the equitable lien or mortgage will follow as of course." (Citing cases.)

In the case of McFerran v. Louisville Title Company's Receiver (Ky. App.) 71 S. W. (2d) 655, 657, it was said:

"* * * Equitable liens, which do not depend on possession (Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075), are of two kinds, (1) those that may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings, and (2) those that arise from a contract which shows an intention to charge some particular property with a debt or obligation (Carpenter v. Dummit, 221 Ky. 67, 297 S. W. 695; Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409); and such liens will be enforced, not only as between the parties, but as against one who takes with notice, or, like an assignee or receiver, stands in the shoes of the debtor. In re Interborough Consolidated Corporation (C. C. A.) 288 F. 334, 32 A. L. R. 932. * * *

"Examples of equitable liens arising out of contracts are Geddes v. Reeves Coal & Dock Company (C. C. A.) 20 F. (2d) 48, 54 A. L. R. 282, holding that an agreement to pay one a percentage of the amount recovered through the audit of freight bills of the promisor fixed a lien upon the sum when recovered: Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208, holding that an agreement between Robert G. Ingersoll and five of the heirs of Andrew J. Davis, whose will excluded them from sharing in his estate, that, if Ingersoll would defeat the probate of the will they would pay him $100,000 out of their respective shares of the estate thereby saved, created a lien on funds in favor of Ingersoll; and Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530, holding that a contract by which an attorney agreed to give two other attorneys one-third of his contingent fee if they would attend to the case created a lien on the fund recovered under

the agreement. Though in most cases where equitable liens arising out of contracts have been enforced, the contracts have been in writing, the rule is not confined to written contracts. On the contrary, an equitable lien may result from a verbal agreement, provided the intention clearly appears. Barnes v. Alexander, supra. Great Northern State Bank v. Ryan (C. C. A. 8th) 292 F. 10; Jackman v. Newbold (C. C. A.) 28 F. (2d) 107, 62 A. L. R. 729; Walker v. Harris' Ex'rs (Ky.) 114 S. W. 775.

In the case of Geddes v. Reeves, Coal & Dock Co. (C. C. A. 8th) 20 F. (2d) 48, 54 A. L. R. 282 (Cert. Denied 72 L. Ed. 212, 48 S. Ct. Rep. 117), it was held:

"A contract under which one party is to receive compensation for services out of a particular fund, if and when realized, and which has been performed by such party, gives him an equitable lien on the fund when created in the hands of any one having notice of the contract."

We quote from the body of the opinion in the case of Walker v. Brown, 165 U. S. 654, 664, 17 S. Ct. Rep. 453, as follows:

* * *Pomeroy in his work on Equity Jurisprudence (vol. 3, sec. 1235), condenses and states the general result of the authorities on the subject, as follows:

" 'The doctrine may be stated in its most general from that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. * * * The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done.' "

We quote further from Pomeroy's Equity Jurisprudence (3rd Ed.) as follows:

"Sec. 1236. On Property to be Acquired in Future. The doctrine is carried still further, and applied to property not yet in being at the time when the contract is made. It is well settled that an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, although, with the exception of one particular species of things, it creates no legal estate or interest in the things when they afterwards come into existence or are acquired by the promisor, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract.

"Sec. 1237. Form and Nature of the Agreement. — Illustrations of Particular Agreements. The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge property, real or personal, as security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows. * * *"

After giving due consideration to all the facts and circumstances in this case in the light of the authorities to which we have referred, we are of the opinion that the trial court did not err in its conclusion that the contractual arrangement entered into between the parties had the effect of creating an equitable lien upon the funds involved herein when collected by the company; that defendant had notice and knowledge of plaintiffs' rights, acted in derogation thereof when he procured an assignment of the funds to himself and appropriated the same to the discharge of an obligation from the company to himself arising subsequent to the establishment of plaintiffs' lien upon said funds, and thereupon became liable to plaintiffs for the sum due under the contract of employment.

Defendant has challenged the sufficiency of the pleadings to support the recovery, and urges that the petition states a cause of action for conversion of property, but that it is not alleged that plaintiffs had an equitable lien upon the funds involved herein and that no issue of estoppel is raised by the pleadings. It has been held that where a plaintiff has complied with the provisions of sections 196, 197, and 198, O. S. 1931, and stated facts showing that he has sustained a detriment without fault on his part, show-

518

ing that such detriment has been caused by the wrongful conduct of another, showing with reasonable clearness that in law or equity the party guilty of such wrongful conduct is liable to plaintiff, he has stated a cause of action, and it then becomes the duty of the trial court to' determine from the allegations and proof what relief the plaintiff may be entitled to receive, and, in order that full and complete relief may be given, the courts of this state are endowed with the dual power of a chancellor and a court of law, so that under the facts stated and proven, if the law be adequate, the court will award such relief as the law authorizes; but, if the law be inadequate to proper relief, then in its equity powers the court will award such relief as in equity and good conscience the facts show the plaintiff entitled to receive. Security Nat. Bank v. Geck, 96 Okla. 89, 220 P. 373. We deem this rule to be controlling on this point. There is no merit in the contention of defendant regarding the insufficiency of the pleadings.

Defendants contends that plaintiffs' right of recovery is predicated upon the oral promise of defendant to answer for the debt of the company and said promise is invalid under the statute of frauds (section 9455, O. S. 1931). The principle is not applicable here. Plaintiffs' recovery is predicated upon the executory contract with the company which had the effect of creating an equitable lien upon certain funds as they were accumulated to the company. The evidence relating to the participation of defendant in the transaction only serves to disclose his knowledge of the contractual arrangement and his acquiescence therein.

It is urged that certain findings of fact by the trial court are not supported by the evidence. We have reviewed the record, and find that those findings necessary to support the judgment are not contrary to the clear weight of the evidence.

Other contentions of the parties have been examined and are without substantial merit.

The judgment is affirmed.

BAYLESS, V. C. J., and RILEY, WELCH, CORN, GIBSON, and HURST, JJ., concur. BUSBY and PHELPS, JJ., absent.