CORRELL, Adm'r, v. HOLT et al.

No. 30843. Dec. 15, 1942.

*132 P. 2d 953.*

C. F. Green, of Ada, for plaintiff in error.

Kerr, Lambert & Conn, of Ada, for defendant in error Thomas P. Holt.

Thompson & Braley, of Ada, for defendants in error I. M. King, Tom D. McKeown, and J. William Crawford, administrator of the estate of John P. Crawford, deceased.

GIBSON, J. This action was instituted in the district court of Pontotoc county by Richard Correll, administrator of the estate of Mary Correll, deceased, against Thomas P. Holt, Tom D. McKeown, I. M. King, and J. William Crawford, administrator of the estate of John P. Crawford, deceased, to cancel certain contracts entered into between plaintiff's intestate and the defendants. Plaintiff stood on his demurrers to the answers of defendants after the same were overruled, and judgment was entered for defendants. Plaintiff appeals.

According to the petition, Mary Correll, during her lifetime, filed with the Mexican Claims Commission at Washington, D. C., a claim against the Republic of Mexico for the alleged wrongful death of her husband at the hands of certain citizens in that republic. As a result of the claim, and in satisfaction thereof, Mexico paid to the Treasury Department of the United States for the benefit of Mary Correll the sum of $11,400. In the meantime Mary Correll died, subsequently a portion of the award was paid by the United States to her heirs. The Treasury Department now refuses to pay any more of said award on account of the claims thereto asserted by defendants under their con-

tingent fee contracts entered into between them and Mary Correll, the exact nature of which was unknown to plaintiff.

It was further alleged that defendants' claims, if any they had, were barred and uncollectable for failure to file appropriate claims with the administrator of said decedent's estate as required by 58 O. S. 1941 § 333.

In their answer McKeown, King, and Crawford pleaded their contingent fee contract with plaintiff's intestate whereby they were to prosecute her claim against the Mexican government and to retain for their services one-third of all sums collected. The contract appears regular in form. They also set out a power of attorney whereby the said Mary Correll authorized the above defendants to recover, collect, and receive all sums of money that may be collected for her under said claim. It was further alleged that the defendants had performed all services required of them under the contract, and as a result thereof the award was obtained from the Republic of Mexico.

Defendants denied that their claim was barred for failure to file creditors' claim with the administrator, asserting that the fee earned by them was not of the character of claims required by law to be filed with the administrator. They alleged that by virtue of their contract and the services performed thereunder they owned and were entitled to one-third of the balance of the fund now held by the Treasury Department.

The prayer was that the plaintiff take nothing by reason of his petition, and that defendants have judgment sustaining their contract as valid and subsisting, and decreeing them to be the owners of one-third of the payments as made by the Treasury Department upon said award.

The defendant Holt in his answer and cross-petition pleaded his contingent fee contract with Mary Correll whereby he was to aid as additional counsel in obtaining an award from the Republic of Mexico. His fee was to be 17½ per cent of the recovery. Due to his efforts $11,400 was recovered and paid into the Treasury Department of the United States. A portion thereof has been paid out by said department to plaintiff, and the plaintiff refused to turn over to defendant any part thereof, but distributed all of said payment to the heirs of Mary Correll. It was further alleged that plaintiff is now asserting that said defendant owns no interest in the award; that plaintiff is now seeking to collect the balance thereof now in the hands of the Treasury Department, and that unless an order is issued directing plaintiff to pay to defendant the portion due him, plaintiff will obtain the balance and pay it out to others in disregard of his interest and ownership therein.

Holt asserted an equitable lien against the fund remaining in the Treasury Department, and alleged that he had returned the same for assessment as required by the Oklahoma Intangible Property Tax Statute (68 O. S. 1941 § 1501 et seq.), and had paid all taxes assessed thereon.

Holt prayed for judgment against plaintiff for 17½ per cent of the award, or $1,995, and that the plaintiff be ordered and directed to pay said sum out of the balance now held by the Treasury Department, or in the office of the Commissioner of Accounts and Deposits, and for all other equitable relief.

Plaintiff stood on his demurrers as aforesaid to the answer and the answer and cross-petition, and judgment was entered for McKeown, King, and Crawford decreeing them to be the owners of an undivided one-third interest in and to all sums awarded by the Special Mexican Claims Commission to Mary Correll and now held by the Treasury Department of the United States in the office of the Commissioner of Accounts and Deposits, and, further, that the plaintiff, upon receipt of any or all of said award, pay one-third thereof to said defendants McKeown, King, and Crawford as set out in their answer.

Holt was awarded judgment on his cross-petition against plaintiff for the sum of $1,995, and plaintiff was ordered and directed to pay said sum to Holt out of the balance of the award now held by the Treasury Department.

Plaintiff says that the answer of McKeown and his associates, and the answer and cross-petition of Holt, show upon their face that any claims they may have had under their contracts were barred for failure on their part to file creditor's claims with the administrator of the estate of Mary Correll in the time and manner provided by 58 O. S. 1941 § 333, and as a result their respective pleadings were insufficient to withstand a general demurrer.

Plaintiff takes the position that the defendants by virtue of their contracts with Mary Correll could have been nothing other than her creditors whose claims against her estate arose upon contract, and were therefore subject to the provisions of section 333, supra, to the effect that if a claim against a decedent's estate arising on contract heretofore made be not presented to the administrator within the time limited in the notice to creditors to present claims, it is barred forever.

In support of the above contention plaintiff cites McLeod v. Palmer, 189 Okla. 466, 117 P. 2d 770, and certain other cases. Those decisions apply or recognize the general rule that the creditors of a decedent must file their claims with the administrator within the time and in the manner provided by statute or be forever barred.

But the claims of the defendants as asserted in this action are not within the contemplation of the statute.

Considering first the answer of McKeown, King, and Crawford, it appears that they neither are, nor claim to be, creditors of the decedent. She owed them nothing in the nature of a pecuniary debt. Their claim was directed against a certain fund in the hands of a third party, the Treasury Department of the United States, who held the same

in trust for Mary Correll or her assigns. American-Mexican Claims Bureau, Inc., v. Morgenthau, 26 Fed. Supp. (D. C.) 904. That case also recognizes as valid the assignment of such claims, and as not in contravention of 31 U. S. C. A. 203, which makes void all assignments of claims upon the United States. According to that decision the United States has no interest in the funds collected except as trustee for the owner.

By her contract with McKeown and his associates Mary Correll expressly assigned to them the one-third interest in all sums that might be collected on her claim. Since her claim was one in the nature of an action in tort, and not one arising on contract, the assignment may not have passed legal title thereto. 12 O. S. 1941 § 221; McCoy v. Moore, 185 Okla. 253, 91 P. 2d 87. But, regardless of the effect the assignment may have had as a transfer of title, it was a valid contract, and impressed upon the fund an equitable lien in favor of said defendants. Whether the lien may be enforced against the United States is immaterial. In any event it could be enforced the moment the funds came into the hands of the plaintiff. In Wylie, Administrator, v. Coxe, 56 U. S. 415, 15 How. 415, 14 L. Ed. 753, wherein a similar claim was involved, the court held as follows:

"Where a contract was made with an attorney for the prosecution of a claim against Mexico for a stipulated proportion of the amount recovered, and services were rendered, the death of the owner of the claim did not dissolve the contract, but the compensation remained a lien upon the money when recovered."

And in Clark v. Armstrong & Murphy, 180 Okla. 514, 72 P. 2d 362, the rule was stated as follows:

"A contract under which one party is to receive compensation for services out of a particular fund, if and when realized, and which has been performed by such party, gives him an equitable lien on the fund when created, in the hands of any one having notice of the contract."

Plaintiff by his action sought to cancel

all the contracts involved on the sole ground that any sum that may have been due the defendants was a contractual debt owed by decedent and, being a debt, was barred for failure to file creditor's claim therefor in the time required by law. But the defendants McKeown, King, and Crawford by their answer sought only to sustain the validity of their contract. They asked no money judgment against the estate.

The effect of the judgment of the trial court was to uphold the contract and to establish it as a valid equitable lien upon the funds in question.

The holder of such a lien is not compelled to file a creditor's claim with the administrator of a decedent's estate in order to preserve and assert the same. The holder of the lien may look to the particular property or the special fund to which the lien is attached for its satisfaction and need not resort to the general assets of the estate. Said section 333 requiring creditor's claim applies only to those claims asserted against the general assets. In Woofter v. Fourth Nat. Bank 182 Okla. 483, 78 P. 2d 683, the court said:

"The provisions of section 1233, O. S. 1931, have application only to those situations where a claim is asserted against the general assets of an estate, and the cases cited involve such situations, and are, therefore, inapplicable under the facts here presented."

That case involved a pledge, but the rule there announced will apply as well to a lien on a particular fund. It was stated as follows:

"A pledgee may maintain proceedings to foreclose the lien of a pledge without the necessity of filing a claim against his pledgor's estate when recourse against other property of the estate than that pledged is not sought."

Turning now to the answer and cross-petition of defendant Holt, it appears that his contract did not purport to be an express assignment to him of any portion of Mary Correll's claim or the fund to be recovered. However, Mary Correll agreed to pay him for his services a sum equal to 17½ per cent of the amount recovered, and in event nothing was recovered said defendant was to receive no compensation. In his cross-petition he alleged that the decedent had agreed that he should receive in consideration of his services 17½ per cent of any and all sums recovered, and that he had performed those services and as a result was entitled to a lien on the sums received.

Holt sought a decree sustaining his contract, and asked judgment against the estate for the amount allegedly due him, and an order directing the administrator to pay said sum, not out of the general assets of the estate, but out of the funds then held in the Treasury Department.

From an examination of Holt's contract and his answer and cross-petition, it is clear that he was entitled to a lien upon the funds for his services. He sought judgment against the estate, but payment was to be restricted to the funds recovered from Mexico when the same should reach the hands of the administrator. The court rendered judgment to that effect.

Since Holt was claiming a lien against a particular fund, he was not obliged to file a creditor's claim in order to preserve the same.

Plaintiff contends further that since the contracts provided for a total contingent fee in excess of 50 per cent of the recovery, they were void under 5 O. S. 1941 § 7, which provides that it shall be lawful for an attorney to contract for a percentage of his client's cause of action not to exceed 50 per cent of the recovery.

McKeown, King, and Crawford were to receive one-third of the recovery, and Holt, whose contract was later executed, was to receive 17½ per cent of the recovery. The combined fees were therefore slightly in excess of 50 per cent. Plaintiff seems to think that both contracts were thereby rendered void.

It appears from the pleadings that Holt had no interest in the contract of

McKeown and his associates, and that the latter attorneys had no interest in Holt's contract. Said contracts were wholly unrelated and independent of each other. It is certain that the first contract was valid so far as the fee therein provided was concerned. It was not affected by the one subsequently entered into between the client and Holt. The rule is stated in 7 C. J. S. 1062, § 185, as follows:.

"When there is an express agreement between an attorney and his client that the pay for services shall be a certain fixed sum, the right of the attorney to the full amount agreed upon is not affected by the client's act in employing additional counsel to assist in the work."

As to Holt's contract, the answer shows that he was aware that other counsel had been previously employed, and that he was to assist as additional counsel. But he was not an associate of the other attorneys in any way except as additional or special counsel employed by the client; and he had no interest in their fee, nor they in his. The statute, supra, says "it shall be lawful for an attorney to contract for a percentage . . . of his client's cause of action . . . not to exceed fifty per centum," etc. We do not say here whether the statute purports to declare any kind of a contingent fee contract unlawful. It merely provides that such a contract not exceeding 50 per cent of the net recovery "shall be lawful." Nor is it necessary for us to determine whether, by reason of the statute, one or more contracts covering a single cause of action and entered into by the client with one attorney or one firm of attorneys would be void if the contingent fee, in the aggregate, exceeded 50 per cent of the recovery. For the purposes of this case, it is sufficient to say that the statute does not purport to limit the aggregate fees provided for in separate and distinct contracts entered into by the client with different attorneys who have no interest in each other's contracts. Contracts with different attorneys are not prohibited by law.

Assuming that the statute makes void any contract for a fee in excess of 50 per cent, so long as the fee provided for in each separate and independent contract is conscionable and does not, in itself, exceed 50 per cent of the total net recovery, it is not void as being excessive. In equity such contracts were not arbitrarily limited in the amount of the contingent fee. Reasonableness was the rule. 6 C. J. 766 § 364. So far as the provisions of the statute are concerned, a client may contract away all his recovery as fees to separate and independent attorneys. The courts, of course, will not sustain unconscionable fees. But that question is not in this case.

There was nothing contained in the pleadings of the defendants to indicate that their contracts were invalid for excessive fees.

It is next urged that the answer of the defendants McKeown, King, and Crawford was subject to general demurrer in that they sought to collect upon a claim constituting intangible personal property, and failed to allege that said property had been assessed for taxation and the tax thereon paid as required by 68 O. S. 1941 § 1515.

Said section 1515, so far as material here, provides as follows:

"In every action or suit in any court for the collection of any bond, note, account receivable, or other intangible personal property as defined in section 1 of this act, the plaintiff must allege and prove:

"That such intangible personal property sued upon has been assessed for taxation under the provisions of this act for every tax year during which he was the owner of same, and that all taxes, together with accrued interest and penalties, assessed upon the property for such period, have been paid; . . .

"If the petition or complaint of the plaintiff fails to make the allegations herein prescribed, or if he fails to prove facts supporting such allegations when made, the action must be dismissed upon demurrer or motion of the defendant, or by the court on its own motion."

As we have stated above, McKeown and his associates were not attempting

to collect upon a claim. Their contract was attacked in equity, and they sought merely to sustain its validity. Whether their claim constitutes intangible personal property within the meaning of the statute, we do not say. For all we know, the Treasury Department of the United States may recognize their contract and pay their portion of the fund direct to them. We are aware of nothing that would prevent said defendants from presenting their contract there and receiving payment. If hereafter they are compelled to resort to an action to collect it in this state, the occasion may then arise to determine this particular question.

As to the answer and cross-petition of defendant Holt, plaintiff says that proper allegation of assessment of the claim and payment of the tax was made therein, but he asserts that said defendant failed to prove the allegation as required by the statute, and therefore it was the trial court's duty to dismiss his cross-petition.

By his general demurrer plaintiff admitted the allegation that Holt had fully complied with the statute, but he takes the position that the statute was not intended to provide a defense against such claims but was enacted wholly for the benefit of the state as an aid in collecting taxes, and therefore its requirement cannot be waived by the parties.

It is insisted that the duty was upon Holt, notwithstanding the demurrer, to prove his allegation concerning payment of the tax, and, since he offered no proof, the court erred in not dismissing his cross-petition.

It is not necessary that we enter into extended discussion of this particular question. The appeal is on transcript without bill of exceptions. Only the record proper is before us. In such circumstances we have no way of knowing what took place beyond the record. We must presume that the trial court followed the statute and was satisfied with the showing made. All presumptions favor the validity of the judgment, and there is nothing in the record to indicate that it was erroneous. Nolan v. Schaetzel, 145 Okla. 231, 292 P. 353. That case involved the payment of mortgage tax, and the appeal was by transcript. The rule there stated well applies here. It reads as follows:

"In the absence of any showing in the record to the contrary, the Supreme Court will presume that the trial court followed the law and did not render the judgment of foreclosure until proof was made that the mortgage tax imposed by chapter 246, Session Laws of 1913, had been paid."

See, also, Greenwood v. Price, 166 Okla. 292, 27 P. 2d 822.

Plaintiff cites Dunlap v. Spencer, 190 Okla. 446, 124 P. 2d 985, as having some bearing on the question of proof of assessment and payment of the tax. But that decision, although published unofficially, did not become final. (See Dunlap v. Spencer, No. 30414, decided by this court October 20, 1942, 191 Okla. 557, 131 P. 2d 994.) However, the case is not helpful here. There the appeal was from a judgment rendered on trial of the cause, and the appeal was by case-made and petition in error.

The judgment of the trial court is, in all respects, affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.