2000 OK CIV APP 37

Diana J. MALICOATE, now Elliott, Plaintiff/Appellant,

v.

STANDARD LIFE AND ACCIDENT IN-
SURANCE COMPANY; and .Pamela
Spess, Personal Representative of the
Estate of Darrell G. Malicoate, De-
ceased, Defendants/Appellees.

No. 93,151.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Feb. 4, 2000.

Paul McKinney, Shawnee, Oklahoma, for Plaintiff/Appellant.

Stephen L. DeGiusti, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee Standard Life and Accident Insurance Company.

Joseph A. Dobry, Chandler, Oklahoma, for Defendant/Appellee Pamela Spess.

## OPINION

ADAMS, Judge:

¶ 1 Diana J. Malicoate, now Elliott (Wife), appeals a trial court judgment in favor of Defendant/Appellee Standard Life and Accident Insurance Company (Employer) and Defendant/Appellee, Pamela Spess, Personal Representative of the Estate of Darrell Malicoate (Estate). Wife brought this action to enforce her perceived right to receive child support, support alimony, and property alimony payments after the death of Darrell Malicoate (Husband), her former spouse, and to have Employer make those payments from renewal commissions on insurance policies sold by Husband while he was serving as an agent for Employer. We conclude the trial court did not err in denying Wife the relief requested as to child support and support alimony payments after Husband's death and affirm that decision. With regard to property alimony, we reverse the trial court's order and remand the case for the trial court to consider whether that obligation has already been satisfied, obviating any need to determine the existence of an equitable lien.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The material facts are undisputed. When Wife and her husband of 27 years, decided to end their marriage, only one of their two children was a minor and living at home. Having agreed to a division of their property and an amount for child support, support alimony, and alimony in lieu of property, Wife and Husband executed a Contract Settling Rights Arising Out of Marriage (Contract), a proposed consent Decree of Divorce (Divorce Decree), and a Declaration of Consent, Agreement and Waiver (Waiver), on February 26, 1997.

¶ 3 The Contract, Waiver and Divorce Decree were presented to the trial court for approval, and on February 27, 1997, Wife and Husband were each granted a divorce on the grounds of incompatibility. In addition to awarding custody of the minor child to Wife and standard visitation for Husband,

the Divorce Decree ordered Husband to pay Wife: (1) $1,000 per month child support "until said child graduates from high school or until further order of the Court is entered herein"; (2) support alimony in the sum of $180,000 or $1,500 per month commencing March 5, 1997, until paid, *payable regardless of Wife's marital status*; and (3) $15,450 as alimony in lieu of property division, to be paid $1,500 per month beginning June 5, 2002, until paid in its entirety. The same day, the Waiver and the Divorce Decree were filed of record.

¶ 4 After the divorce, Husband continued his employment as an insurance agent for Employer until his death on May 16, 1998. Employer immediately ceased honoring monthly garnishments for support alimony and the income assignment for child support it had been paying to Wife from Husband's insurance renewal commissions. Wife attempted to reinstate both payments until Estate, whom Employer had been paying since Husband's death, filed a claim for entitlement to those funds. Upon receipt of Estate's claim, Employer suspended the payments.

¶ 5 Wife then filed this action against Employer and Estate to recover Husband's obligations under their Contract and Divorce Decree, claiming the documents establish their intent that the payments would survive Husband's death and continue to be paid from his renewal commissions. For relief, she requested judgment against Estate and Employer for a continuing right to collect child support, support alimony and alimony in lieu of property division and a determination that she has a valid assignment and a

valid equitable lien on the renewal commissions for the purpose of satisfying the obligation of the Contract and the Divorce Decree.[1]

¶ 6 Employer moved to dismiss Wife's petition for lack of jurisdiction and for failure to state a claim upon which relief can be granted, arguing that her claim must be filed in the pending probate proceedings pursuant to Oklahoma's probate laws. Wife opposed the motion, arguing the trial court had concurrent jurisdiction and that a claim to an "equitable lien" on specific assets of an estate is not required to be filed with the administrator. After a hearing in early December 1998, the trial court entered an order on January 7, 1999, granting Employer's motion to dismiss because Wife's "petition fails to state a claim against [Employer]" and she "must first present her claim in the probate proceeding ... Therefore, [Wife's] current action is premature."[2] In a separate order filed the same day, the trial court directed Employer to pay the renewal commissions into court.

¶ 7 Before the hearing on Employer's motion to dismiss, Estate moved for summary judgment, attaching only the Divorce Decree and the Contract to support its arguments that Wife's claim fails as a matter of law because: (1) neither document expressly creates any lien in favor of Wife for the payment of child support and support alimony after Husband's death, and no lien is created in a divorce decree unless the trial court explicitly creates one; and (2) there is no express agreement within the Contract that support alimony would survive Husband's death and no express order within the Divorce Decree

---

1. It is unclear from the petition alone whether Wife was attempting to enforce the Contract or the Divorce Decree in addition to her equitable lien claim. As a result, Estate argued in its motion for summary judgment that Wife has "no contractually enforceable claim." In her response, Wife argued the parties had an "express agreement," an "enforceable contract," and that she "in fact filed her separate action to enforce the contract which was incorporated in the Decree of Divorce." However her position was clarified by her February 14, 1999 Motion to Reconsider, explaining that "[t]he action of [Wife] herein, is not founded upon contract. It is founded upon judgment, into which contracts merged." Accordingly, we treat her action as

one to enforce the Divorce Decree and to establish an equitable lien on the renewal commissions.

2. Technically, the trial court's order must be reviewed under the standards applicable to summary judgment orders because Employer's motion presented matters outside the pleadings which were not excluded by the trial court. *See* 12 O.S.1991 § 2012(B). Because this case turns on a question of law, the distinction is insignificant to our decision. We further note for the record that the trial judge assigned to Wife's case is not the same judge who granted the Malicoates' consent divorce decree.

that child support would survive Husband's death and therefore, both payments automatically terminated upon his death.

¶ 8 Wife opposed the motion, repeating her response to Employer's motion to dismiss and distinguishing the equitable lien she is claiming on the renewal commissions from a decree-ordered lien against real property. After a hearing on Estate's motion in late December 1998, the trial court took the matter under advisement. By order filed on February 5, 1999, the trial court granted Estate's motion for summary judgment, finding that "there are no material issues of fact, only issues of law," and then dismissed Wife's case "but all without prejudice to [Wife] making her creditor's claim in the probate case."

¶ 9 Less than 10 days from the filing of both the January 7, 1999 and the February 5, 1999 orders, Wife filed a "Motion to Reconsider, or in the Alternative, Motion for New Trial" (hereinafter, motions for new trial)[3] arguing that the trial court's orders requiring her to file a creditor's claim with Estate prior to establishing her right to an equitable lien on the renewal commissions is contrary to Oklahoma law. Employer opposed Wife's new trial motion, contending it contained nothing new, whereas Estate contended Wife misunderstood the trial court's summary judgment ruling.[4] At the hearing on Wife's motions for new trial, the trial court overruled both, *inter alia*,[5] and thereafter filed a single order to that effect. This appeal followed.

### ESTATE'S MOTION TO STRIKE PROPOSITIONS OF ERROR

¶ 10 Wife's Petition–in–Error includes four alleged errors for appellate review. As in her motions for new trial, Wife alleges the trial court erred as a matter of law by dismissing Employer and granting summary judgment in favor of Estate based on the finding that she must file a creditor's claim with Estate. Wife further challenges the latter order, claiming there are two issues of fact which preclude summary judgment— whether there was an equitable lien imposed upon the renewal commissions in her favor and whether Husband's obligations for child support and support alimony survived his death. As her fourth error, she alleges the trial court's conclusion that an equitable lien may be created only by express words in a decree of divorce is based on an incorrect interpretation of the holding in *First Community Bank of Blanchard v. Hodges,* 1995 OK 124, 907 P.2d 1047.

¶ 11 Estate contends in its Motion to Strike Propositions of Error, filed concurrently with its response to Wife's Petition–in–Error, that she failed to timely raise all but the first error as grounds for granting a new trial in both motions and that she did not cure this failure at the hearing on those motions. As a result, Estate contends only the first alleged error may be considered on appeal, citing as its authority Rule 17 of the Rules for the District Court, 12 O.S.1991, Ch. 2, App. 1 and *Arkansas Louisiana Gas Company v. Travis,* 1984 OK 33, 682 P.2d 225.

¶ 12 Rule 17 provides that when a party files a motion for new trial, that party may not, on appeal, rely on any errors which are not fairly embraced in the specific grounds stated therein. *See also* 12 O.S.1991 § 991(b). The purpose behind Rule 17 is to promote judicial economy by allowing the

---

**3.** Because Wife's motions were filed within 10 days of the filing of both of the trial court's orders, we treat them as functional equivalents of a motion for new trial which extends the time for appeal and secures a full review of the adverse judgment and all proceedings that led to it, if error was properly preserved. *See Hall v. Edge,* 1989 OK 143, 782 P.2d 122; *Schepp v. Hess,* 1989 OK 28, 770 P.2d 34.

**4.** In its response to Wife's motion, Estate claimed that "[t]his Court reviewed the undisputed facts and applied the applicable law. This Court's Summary Judgment in favor of [Estate] had

nothing to do with any pretended (and nonexistent) finding that [Wife] must present her claims in any probate proceeding."

**5.** Estate had filed a "Motion for Order Directing Release of Funds, Held by Lincoln County Court Clerk's Office and Order Directing Payment of Further Residuals to Defendant Estate." The trial court overruled the motion and continued its January 7, 1999 order that all renewal insurance commissions, payable by Employer, upon policies of insurance sold by Husband, should be paid to the Lincoln County Court Clerk.

trial court to correct its own errors. *Smith v. Pierce,* 1992 OK CIV APP 147, 843 P.2d 391. To be effective, a new trial motion must inform the trial court of specific defects in the *prior* judicial proceedings. *See Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, 681 P.2d 757.

■ ¶ 13 The record confirms Estate's assertion that only Wife's first error is specifically argued as a ground for granting a new trial in both of her motions. However, Rule 17 does not apply to her fourth error because it addresses an alleged error with the trial court's decision *at the hearing* on her motions for new trial. Accordingly, Estate's motion to strike that issue is denied, leaving for our determination whether Wife's second and third alleged errors are reviewable by this court. As noted in *Horizons, Inc.,* any lack of specificity in the language of a new trial motion will be regarded as effectively cured by a record showing that, at the hearing on that motion, the movant, without any objection from the opposite party, precisely identified each point of law which is fairly comprised in the general allegations of the defective motion.

¶ 14 At the hearing on Wife's motions for new trial, the trial court first identified what it considered the question of law raised by Wife's motion to reconsider its February 5, 1999 summary judgment order—whether the divorce decree and the property contract that goes with it create a lien or not. Immediately thereafter, the trial court invited argument on Wife's claim of "another—lien on the fund." When Wife's attorney submitted the first of what he identified as three "issues of fact" precluding summary judgment, *i.e.,* whether the delivery of the $85,000 check from Husband's life insurance policies to Wife was in satisfaction of his obligation under the parties' contract and divorce decree, Estate objected on the basis of Rule 17. The record reveals that the trial court *overruled* Estate's objection and immediately requested Wife's counsel to identify the remaining two issues, *i.e.,* whether there was intent to create an equitable lien and whether there was an agreement between Wife and Husband to create the lien.

■ ¶ 15 After expiration of the statutory time for filing a motion for new trial, a timely-filed motion may be amended orally at the hearing on the motion to clarify the grounds originally set out, but not to set up new and independent grounds. *Arkansas Louisiana Gas Company v. Travis,* 1984 OK 33, 682 P.2d 225. Both trial courts and appellate courts have jurisdiction to consider an amendment of a motion for new trial which asserts a new and independent ground for granting such *only if* the amendment was filed within the statutory time for filing a motion for new trial as required by 12 O.S. 1991 § 653. *Arkansas Louisiana Gas Company.* By its actions, the trial court essentially granted Wife permission to amend her motions for new trial *outside* the statutory time for filing such and *over* Estate's objection.

¶ 16 Thus, the question whether we have jurisdiction to consider Wife's second and third alleged errors depends on whether they are "new and independent grounds" for granting a new trial or clarifications of the single ground set out in her original motions, *i.e.,* are the two alleged errors fairly embraced in the specific ground stated in Wife's motions for new trial?

¶ 17 According to one of the authorities Wife cited in her briefs on her motions for new trial, *Correll v. Holt,* 191 Okl. 622, 132 P.2d 953 (1942), one *claiming* an equitable lien on a particular fund is not required to file a creditor's claim in order to preserve or assert the claim, because the time-bar of 58 O.S.1991 § 333 applies only to those situations where a claim is asserted against the general assets of an estate. There are two kinds of equitable liens, neither of which depend on possession: (1) those that may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings, and (2) those that arise from a contract which shows an intention to charge some particular property with a debt or obligation; such liens will be enforced not only as between the parties, but as against one who takes with notice, or, like an assignee or receiver, stands in the shoes of the debtor. *Clark v. Armstrong & Mur-*

*phy,* 180 Okl. 514, 72 P.2d 362 (1937). In this case, Wife has continuously claimed the second type of equitable lien was created by the Contract, *i.e.,* Husband intended to secure his obligations under the Divorce Decree after his death with his renewal commissions.

¶ 18 In light of these authorities, the three questions Wife raised at the hearing on her motions for new trial pertain to the creation of her alleged "equitable lien." Based thereon, we conclude that Wife's second alleged error—whether there was an equitable lien imposed upon the renewal commissions in her favor—is fairly embraced by the single error she asserted as a ground for granting a new trial in both of her motions and therefore may be considered on appeal. Accordingly, Estate's motion to strike Wife's second alleged error is denied.

¶ 19 Wife's third alleged error— whether Husband's obligations for child support and support alimony survived his death—is not fairly embraced in the specific ground alleged in her motions for new trial and *ordinarily* would be considered a new and independent ground requiring us to grant Estate's motion to strike that issue since Wife clearly did not raise it in her motions for new trial. However, the record establishes that the trial court did not consider the third issue, which was asserted by Estate as an additional ground supporting summary judgment.

¶ 20 The appellate record contains no transcript of the hearing on Employer's motion to dismiss, Estate's motion for summary judgment or the trial court's rulings on either motion. Therefore, the only indication in the record of the trial court's bases for its separate orders dismissing Wife's claim against Employer and granting Estate's summary judgment order is found in those orders—respectively, Wife "must first present her claim in the probate proceeding," and "[Estate's] summary judgment is sustained and this case is dismissed, but all without prejudice to [Wife] making her creditor's claim in the probate case." Considering the language of each order, we must conclude the trial court made no decision on the issues of an "equitable lien" and the "post-death survival of child support and support alimony

obligations," leaving Wife free to litigate those issues in the pending probate proceedings.

¶ 21 Furthermore, the only transcript that is included in the appellate record, which is from the hearing on Wife's motions for new trial, shows Estate disagreed that the three questions Wife identified were "issues of fact" and repeated its summary judgment arguments: (1) there is no express written agreement and no express trial court order that child support and support alimony payments would survive Husband's death as required by *Whitman v. Whitman,* 1967 OK 162, 430 P.2d 802 and *May v. May,* 1979 OK 82, 596 P.2d 536, respectively; and (2) no lien is created in a divorce decree unless the court expressly creates one, relying on 43 O.S.Supp.1992 § 134 and *First Community Bank of Blanchard v. Hodges,* 1995 OK 124, 907 P.2d 1047.

¶ 22 Apparently agreeing with Estate's latter argument, the trial court immediately concluded that:

> The motion to reconsider will be overruled. The divorce decree itself supersedes whatever agreement the parties thought they might have had. And it is not in the decree. There's no express (sic), as I read it—And I may be incorrect.
>
> And that's what the issue at law is, is whether or not that divorce decree and the contract settling the rights between the parties creates the equitable lien. If it does, I'm wrong. I don't think it does, and I don't think so as a matter of law. And so that's the reason for my ruling. Whether the parties intended to do it or not, it doesn't look to me like they got it done. So the motion to reconsider will be overruled.
>
> The motion to reconsider the dismissal of [Employer] will be overruled as moot, because [Estate] is the real party in interest. I may have been wrong to dismiss out [Employer] as I did earlier, on the ground that I specifically alleged. But I think that's moot at this point, in light of the summary judgment.

¶ 23 The trial court's decision on only the "equitable lien" issue is confirmed later dur-

ing the same hearing, when Wife's attorney objected to Employer's oral application for attorney fees, stating that "[t]his is not a matter that should be handled in probate court. We have cited about three or four cases," and the trial court interrupted, responding, "[w]ell, it should not have been handled in the probate court if you end up being correct and if there was a lien. But if there wasn't a lien, then it probably should have gone to probate to start with."

¶ 24 In essence, Estate argues that Wife is precluded from arguing on appeal about an alternative ground to support the trial court order which the trial court did not address because she did not raise the issue in her motions for new trial. Our own research finds no Oklahoma case law directly on point. However, 12 O.S.1991 § 991(b), upon which Rule 17 is based, provides that "[i]f a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error *that were available to him at the time of the filing of his motion for a new trial but were not therein asserted.*" (Emphasis added). Under the specific procedural facts of this case as shown by the record before us, we cannot say that the specific trial court error raised by Wife's third alleged error was in fact *available to her* when she filed her motions for new trial. Considering § 991(b) and the purpose of Rule 17, we conclude it would be unfair to expect Wife to identify alleged errors with the trial court's ruling on an issue that the record does not demonstrate the trial court had decided when Wife filed her motions for new trial, or, for that matter, has ever decided. Estate's motion to strike Wife's third alleged error is denied.

## ANALYSIS

¶ 25 Wife contends the trial court erroneously concluded that an equitable lien may only be created by express words in the divorce decree and based upon this conclusion granted the judgment in question. She argues that conclusion is based on an incorrect interpretation of *First Community*

*Bank of Blanchard v. Hodges,* 1995 OK 124, 907 P.2d 1047. We agree.

¶ 26 The judicially-created lien against the payor's real property in the divorce decree in *First Community Bank of Blanchard,* which the Court characterized as an "equitable lien," is distinguishable from the "equitable lien" Wife is claiming against the renewal commissions. Although both liens originate from the trial court's equitable powers,[6] the type of lien addressed in *First Community Bank of Blanchard* is ordered by the trial court in the divorce decree to secure the payment of support alimony or property division alimony, thus the name "decree-ordered lien." The type of equitable lien Wife seeks to impose on the renewal commissions arises from a contract which shows an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or obligation, or whereby the party promises to convey or assign or transfer the property as security; such a lien creates no legal estate or interest in the property. *Clark v. Armstrong & Murphy,* 180 Okla. 514, 72 P.2d 362.

¶ 27 More importantly, the requirements for a decree-ordered lien are now mandated by statute. Title 43 O.S.Supp.1992 § 134(A), provides, in pertinent part, that "[a]n order for the payment of money pursuant to a divorce decree, whether designated as support or designated as pertaining to a division of property *shall not be a lien against the real property* of the person ordered to make such payments *unless the court order specifically provides for a lien on real property.*" (Emphasis added). Wife's claim to an equitable lien, however, is against Husband's personal property, *i.e.,* renewal commissions, not real property. Moreover, she is seeking payment of both support alimony and child support, the latter of which § 134(A) does not address. Section 134(A) and *First Community Bank of Blanchard* do not apply to Wife's claim, and the trial court erred in determining that Wife could have no equitable lien because the divorce decree did not expressly create such a lien.

---

**6.** *See Gardenhire v. Gardenhire,* 2 Okl. 484, 37 P. 813 (1894); *Haven v. Trammell,* 79 Okl. 309, 193 P. 631 (1920); and *Clark v. Armstrong & Murphy,* 180 Okl. 514, 72 P.2d 362 (1937).

¶ 28 However, our inquiry does not end there. A trial court's judgment must stand if correct even though it is based on the wrong reasons. *G.A. Mosites Company of Fort Worth, Inc. v. Aetna Casualty and Surety Company*, 1976 OK 7, 545 P.2d 746. As previously explained, the trial court did not address all of the arguments made by Employer and Estate as alternative grounds for summary judgment in their favor. Because these theories provide alternative bases for affirming the trial court, they must be considered. *Reddell v. Johnson*, 1997 OK 86, 942 P.2d 200.

¶ 29 In support of its dismissal motion, Employer also argued that the only forum for resolving Wife's lien claim is in the pending probate proceeding, citing as its authority, 58 O.S.1991 § 346, which requires that "[a] judgment against the decedent *for the recovery of money*, must be presented to the executor or administrator, like any other claim." (Emphasis added.) Employer additionally relies on *Whitman v. Whitman*, 1964 OK 259, ¶ 7, 397 P.2d 664, 668 [7] wherein the Court stated that "[w]hether the child support order does constitute a proper charge against the estate did not present a litigable question in the revivor proceeding *as such question must be determined in the manner prescribed by the provisions of 58 O.S.1961 §§ 339 and 346.*" (Emphasis added).

¶ 30 The case Employer relies upon is distinguishable. The divorced wife in *Whitman*, 1964 OK 259, 397 P.2d 664, was seeking to revive the divorce action against the executrix of her deceased husband's estate to enforce the order for child support, not to impose an equitable lien on a specific fund. Furthermore, § 339 has no application here. It applies to claims for debts owed by the decedent that had not been collected prior to death but were subsequently presented to and then rejected by the executor or administrator of the decedent's estate. *Anderson v. Merriott*, 1976 OK 74, 550 P.2d 1320.

¶ 31 Although § 346 applies to money judgments, it does not apply to Wife's action in this case because she seeks to enforce an equitable lien against specific assets of the estate. Further, 58 O.S.1991 § 341, which provides that "[n]o holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator," does not support Employer's argument. As the Court in *Correll v. Holt*, 191 Okla. 622, 132 P.2d 953, concluded about 58 O.S.1991 § 333, § 341 does not require presentation of an equitable claim to the administrator of the estate of the decedent prior to filing an equitable action in court. *See Johnson v. Hazaleus*, 1959 OK 62, 338 P.2d 345. Wife was not required to pursue her equitable lien claim in probate court.

¶ 32 However, at least as to any lien claim for continued child support and support alimony after Husband's death, the record does contain an argument by Estate that might support the trial court's judgment with regard to those items. As an additional basis for summary judgment, Estate argued that: (1) There is no express agreement within the Contract *and* no express order within the Divorce Decree that child support payments are to survive the death of Husband; and (2) There is no express agreement within the Contract or Divorce Decree that support alimony payments are to survive Husband's death. We agree.

¶ 33 In Oklahoma, child support orders terminate automatically upon the death of a parent, at least with respect to payments which would have accrued after death, where the court has not, *pursuant to the agreement of the parties*, in effect, ordered that the payments shall not be affected by the parent's death. *Whitman v. Whitman*, 1967 OK 162, 430 P.2d 802; *Abrego v. Abrego*, 1991 OK 48, 812 P.2d 806. Similarly, an award for support alimony does not survive the death of the paying spouse and cannot be enforced against the paying spouse's estate without an

[7]. The wife in that case filed an action to revive her and her former husband's divorce action subsequent to entry of the judgment and his death, attempting to collect from his estate the balance of his child support obligation under the decree. After the *Whitman* Court dismissed the estate's appeal because it was not an aggrieved party, she filed an action to enforce the divorce decree for the same reason. His estate appealed the trial court's judgment in her favor, resulting in the case discussed later in this opinion, *Whitman v. Whitman*, 1967 OK 162, 430 P.2d 802.

express agreement. *Funnell v. Funnell,* 1978 OK 69, 584 P.2d 1319; *May v. May,* 1979 OK 82, 596 P.2d 536.

■ ¶ 34 Although Estate's arguments address totally separate issues, child support and support alimony, each raises a question common to both payments—Did Husband and Wife have an agreement that the respective payments would survive Husband's death? A contract must be interpreted to give effect to the mutual intention of the parties, as it existed at the time of contracting. When a contract is reduced to writing, the intention of the parties is to be interpreted from the writing alone, and if unambiguous, the language of the contract controls. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together. If the language is clear and explicit and does not involve uncertainty, the words used are to be understood in their ordinary and popular sense. See 15 O.S.1991 § 152, *et seq.*

■ ¶ 35 Wife contends their intent that the child support and support alimony payments extend beyond Husband's death can be found in the Contract. Estate argues both the Contract and Divorce Decree are silent on both issues. In a divorce case, "[a]n intent to modify applicable law by contract is not effective unless the power is *expressly exercised* . . . To escape the incidence of general law, the agreement *or* decree must not be silent as to the parties' intent *vis-a-vis* the law that applies to them." (Emphasis added). *Dickason v. Dickason,* 1980 OK 24, ¶ 10, 607 P.2d 674, 677. *See also Acker v. Acker,* 1979 OK 67, 594 P.2d 1216; *Stuart v. Stuart,* 1976 OK 107, 555 P.2d 611.

¶ 36 Because Wife seeks to escape the law regarding the survival of both child support and support alimony payments, the intent to

do so must be expressly found within the Contract, Waiver or Divorce Decree. Considering neither party argues these documents are ambiguous, the construction of these documents to ascertain whether Wife and Husband intended the child support and support alimony payments to extend beyond Husband's death is a question of law for the court. *See Terrill v. Laney,* 200 Okl. 308, 193 P.2d 296 (1948); *Hicks v. Hicks,* 1966 OK 91, 417 P.2d 830.

■ ¶ 37 Beginning with the Contract, we note that paragraphs 1 through 3 set out the parties' agreement to sell their real property and farm-related personal property.[8] Paragraph 4 of the Contract provides that any other personal property "not specifically mentioned herein, *except as may be addressed herein below pertaining to certain insurance renewal premiums earned by [Husband] in the future*" will be awarded to the person currently in the possession of the property. No other specific reference to the insurance renewal premiums was made in the Contract.

¶ 38 In paragraphs 5 through 7, Husband agrees to co-sign a promissory note for the purchase of a home for Wife, to pay and assume all marital debts, and to maintain, pay and assume all medical and dental insurance, deductibles and non-covered items for the parties' minor child. Paragraph 8 provides:

[Husband] agrees with[Wife] that he will execute such instruments as may be necessary with his current or future employer to insure that all payments due for child support, support alimony, alimony in lieu of property division or such other sums as may be payable to order of [Wife] in order to effectuate the provisions of the [Contract] or in connection with that certain [Divorce Decree] . . . In the alternative, [Husband] may procure a life insurance policy on (sic) a sum sufficient to meet all obligations of [Husband] to [Wife] in connection with the [Contract] and in connec-

8. The parties agreed to own an undivided ½ interest until their real property sold, at which time they would divide the net proceeds equally. In the event the farm-related personal property was not sold within 6 months after the divorce,

Husband further agreed to pay Wife "the sum of $4750.00 as additional alimony in lieu of property division in addition to any such sums as ordered to be paid in the Decree of Divorce."

tion with the [Divorce Decree] ... [Wife] shall be named as primary beneficiary of said life insurance policy.

\* \* \*

The parties agree that this is a material consideration in entering into this Contract and same may be enforceable in the case referenced hereinabove or an independent cause of action with regard to same.

¶ 39 Paragraphs 9 and 11 address the payment of Husband's former attorney and the payment of the parties' own attorney fees and costs, respectively. Paragraph 10 provides that "this Contract will be confirmed and incorporated as a part of the Judgment and Decree to be rendered in the divorce case pending between said parties," and paragraph 12 provides that "[t]his agreement shall be binding on each's heirs, executors and/or personal representatives."

¶ 40 We can not agree with Wife's argument that paragraphs 8 and 12, when read together, clearly establish Husband's intent "to live up to the obligations imposed by the Divorce Decree and the Contract, *even after his death.*" (Emphasis added). According to 43 O.S.Supp.1994 § 115(B), the law in effect when the parties executed the Contract, the Legislature required the district court to order the wages of any parent ordered to pay child support be subject to *immediate* income assignment *regardless of whether support payments are in arrears at the time of the order,* unless (1) one of the parties demonstrates and the district court finds that there is good cause not to require immediate income withholding; or (2) *a written agreement* is reached between the parties which provides for an alternative arrangement. *See also* 12 O.S.1991 § 1171.3(J)(3).[9]

¶ 41 As we interpret the clear and unambiguous language of paragraph 8, it is an agreement providing an "alternative arrangement" to the immediate income assignment mandated by § 115(B) and § 1171.3(J)(3), modified to include garnishment for support alimony and alimony in lieu of property division. Because the second sentence begins with "[i]n the alternative," Husband is agreeing that he will execute the necessary instruments, *e.g.,* a voluntary income assignment and garnishment, to permit his employer, current or future, to withdraw payments for child support, support alimony and alimony in lieu of property division from his *monthly* wages, *or* if Husband chooses not to execute those instruments, he "may procure a life insurance policy on (sic) a sum sufficient to meet all obligations of [Husband] to [Wife] in connection with the [Contract] and in connection with the [Divorce Decree]." Although the second sentence addresses the possibility of an untimely death, it is as likely an option to provide payment for unpaid child support, support alimony, or alimony in lieu of property division resulting from Husband's failure to make monthly payments that otherwise would have been paid had he executed the voluntary income assignment and garnishments for his employer as it is an agreement to extend liability for child support and support alimony beyond his lifetime.

¶ 42 Our interpretation is supported by the replacement of § 115(B)'s mandated immediate income assignment in the Divorce Decree with the trial court's order assigning that portion of Husband's earnings "specified in [12 O.S.1991 § 1171.2] ... to meet the periodic child support *arrearages* or other maintenance payments, or both, imposed by this Decree." Section 1171.2 entitles "[a]ny person awarded custody and support for a minor child" to proceed to collect "any current child support *and* child support due and owing through income assignment pursuant to the provisions of this section and Sections 12 and 13 [now, 12 O.S.1991 §§ 1171.3 and 1171.4]...." (Emphasis added). Section 1171.3(A) permits "[a]ny person or entity entitled to receive child support payments for the current month or for any prior month or months" to initiate income assignment proceedings by filing with the court an application signed under oath specifying, *inter alia,* "[t]hat the obligor has failed to make child support payments required by a child support order in an amount equal to the child support payable for at least one (1) month."

---

9. Both § 115(B) and § 1171.3(J)(3) apply to cases in which services are not being provided under the state child support plan pursuant to 56 O.S.1991 § 137.

¶ 43 Moreover, the consent Divorce Decree, as drafted by Wife's counsel, simply provides for monthly payments of $1000 child support "until said child graduates from high school or until further order of the Court is entered herein." Neither phrase assists Wife's argument. The first phrase is commonly used in divorce decrees to communicate the law in Oklahoma that a child is entitled to support by their parents until they reach 18 years of age and if they are regularly and continuously attending high school, the entitlement extends through the age of 18. See 43 O.S.Supp.1998 § 112(D).

¶ 44 The first phrase is not even as specific as "during their minority" which was the phrase relied upon in *Smith v. Funk*, 141 Okl. 188, 284 P. 638 (1930), to extend *child* support beyond the father's death. Moreover, *Smith's* holding was limited by *Whitman* to the circumstances presented there.[10] Similarly, the second phrase is insufficient to extend the child support obligation beyond death. It is simply a recognition of or reference to the reserved power of the court to modify or change the order. *Whitman*, 1967 OK 162, 430 P.2d 802. The Contract and Divorce Decree are silent on the issue of child support and thus fail to meet satisfy the requirements of *Whitman* regarding child support after the payor's death.

¶ 45 The Divorce Decree provides for 120 monthly payments of support alimony, *payable regardless of Wife's marital status*. We find it significant that this agreement was expressly included to avoid the application of *Funnell* and § 134(A), which mandates the termination of support alimony payments upon the recipient's remarriage, whereas the

Divorce Decree has no similar express provision regarding the survival of support alimony and child support after Husband's death.

¶ 46 Nor is the Waiver any assistance to Wife's position. The provisions wherein the parties expressed their understanding that certain provisions of their agreement "are now or may become inconsistent with the laws of this State," and which they expressly waived the application of "such existing and/or future law as is or may become inconsistent with each and all of the terms of the said agreement" similarly fail to supply the required intent that the child support and support alimony payments survive Husband's death.[11]

¶ 47 Neither the Contract between Husband and Wife nor the Divorce Decree includes any express indication of spousal intent, communicated to the trial court, to make child support and support alimony extend beyond Husband's death, as would be required under the rule recognized in *Dickason*. Wife's claim to an equitable lien on the renewal commissions to secure payment of child support and support alimony which would accrue after Husband's death must fail because, under the Contract and Divorce Decree, those obligations did not survive Husband's death.

¶ 48 However, we may not draw a similar conclusion concerning her claim insofar as it would secure payment of property alimony awarded her under the decree. According to *Funnell*, 1978 OK 69, ¶ 15, 584 P.2d at 1323, alimony for property division is "enforceable against the estate of a deceased

---

10. The *Whitman* Court concluded, 1967 OK 162, ¶ 14, 430 P.2d at 806:

    [o]ur decision in *Smith v. Funk* should be *limited* and regarded as a holding by this court that when the parents *enter into a written separation agreement and the father agrees to pay monthly child support during the minority of the children*, and *the divorce decree ratifies and confirms the agreement and decrees that the father make monthly payments for the support of the children during their minority, the obligations and rights arising from such judgment survive the death of the father and constitute a continuing claim against the estate.* The facts in *Smith v. Funk* are not the same or even similar to

    those presented in the instant appeal. The decision in that case is not applicable to the present case. (Emphasis added).

11. Paragraph 2 of the Waiver provides, in pertinent part:

    a. The provisions with regard to *assignment of certain future income proceeds receivable* by [Husband] to order of [Wife] and other provisions with regard to maintenance of life insurance for the benefit of [Wife] and the parties minor child.
    * * *
    c. *No termination provisions applicable on payment of support alimony.* (Emphasis added).

[payor] ... in accordance with well settled law."

 ¶ 49 Under ordinary circumstances, we would be required to determine whether the Contract and Divorce Decree were sufficient to create an equitable lien to secure the payment of the property alimony. However, the record suggests that Wife has received life insurance proceeds in excess of the property alimony award which were attributable to a life insurance policy owned by Husband in what appears to be an attempt to exercise his option under the agreement to secure his obligations by procuring life insurance.

¶ 50 If the property alimony award has been satisfied by the use of the life insurance, there is no need to determine whether Wife has an equitable lien against the renewal commissions to satisfy a debt that has already been paid. This is particularly appropriate in light of the fact that the trial court has not addressed Wife's claim to an equitable lien, having erroneously concluded that her only recourse was to demonstrate a lien expressly created in the divorce decree. Upon remand, the trial court must first determine whether the property alimony award has been satisfied. If it has, then judgment for Employer and Estate would be appropriate. If not, then the trial court must determine whether, under Oklahoma law, Wife can establish an equitable lien under *Clark*. If she is able to establish an equitable lien for property alimony, judgment in her favor would be appropriate. However, if she cannot, judgment for Employer would be appropriate, and Wife would be required to pursue her claim for the unpaid property alimony through the probate court.

## CONCLUSION

¶ 51 The trial court's judgment is affirmed insofar as it denies Wife any lien on the renewal commissions to secure payment of support alimony and child support for periods after Husband's death. In all other respects the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

¶ 52 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

¶ 53 HANSEN, V.C.J., and BUETTNER, J., concur.